Ex parte CARLSON.

Ex parte STEVENSON.

Ex parte CARLISLE.

Ex parte HYUN.

Nos. 12491, 12492, 12503, 12505.

United States District Court
S. D. California, Central Division.

Nov. 10, 1950.

Field, District Adjudication Officer, U. S. Immigration and Naturalization Service, Department of Justice, Los Angeles, Cal., for respondent.

HARRISON, District Judge.

In the above entitled habeas corpus proceedings which were initiated to secure the release on bail of several aliens held without bail by the immigration authorities pending final determination of their cases, an order to show cause was issued and a return thereto filed by the Attorney General. The petitioners, through oral argument and by means of briefs presented to the court, contend that the return to the order to show cause is insufficient and that they are entitled to their discharge on the state of the record as a matter of law. The return contained a copy of the warrant of arrest wherein the petitioners were retained in custody under authority of Section 156, Title 8 U.S.C.A., as amended by the Internal Security Act of 1950 (U.S. Congressional Service pp. 3740-3762). Said section as amended in part reads as follows: "* * * Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole. * * *" The government contends that this provision of the law as amended gives the Attorney General *absolute* discretion in the matter of bail, and that this court has no jurisdiction to review the exercise of this discretion.

The court cannot accept the contention of either of the parties. I am of the opinion that the amendments, insofar as material to this matter, were a legislative adoption of clarifying language read into the original Section 156 by certain rulings of the Second Circuit, and not a change in the law giving the Attorney General absolute discretion. In U. S. ex rel. Zapp v. District Director, etc., 2 Cir., 120 F.2d 762, reading at page 765 the following language is used: "The natural interpretation of the language used, that the alien 'may be

Margolis & McTernan, by John W. Porter, Los Angeles, Cal., for petitioner Frank Carlson.

Rose S. Rosenberg, Los Angeles, Cal., for petitioner Miriam Christine Stevenson.

Stanley Fleishman, Hollywood, Cal., for petitioner Harry Carlisle.

Milton S. Tyre, Los Angeles, Cal., for petitioner David Hyun.

A. L. Wirin, Los Angeles, Cal., amicus curiae.

Ernest A. Tolin, U. S. Atty., Walter S. Binns, Chief Asst. U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Howard L.

released under a bond,' would indicate that the release is discretionary with the Attorney General; * * *."

This same view of the discretionary power of the Attorney General was reiterated and more clearly defined in U. S. ex rel. Potash v. District Director, etc., 2 Cir., 169 F.2d 747, 751, wherein the court stated: "The foregoing decisions and also, as it seems to us, the general spirit of our institutions make it improbable that Congress intended to give the Attorney General unlimited power over the admission to bail of aliens against whom deportation proceedings are brought. We think that it requires more than the general grant of power to fix bail in Section 156 to exempt the Attorney General from all control in the exercise of that function even if he should be shown to have acted in an arbitrary manner. This interpretation is particularly indicated in such a situation as the present where personal liberty is involved and there has been no determination that the alien is deportable."

■ The language of these decisions together with a careful comparison of the language of the respective statutes indicates that no such grant of power as is contended for by the government was given by the amendments to 8 U.S.C.A. § 156 contained in the new Internal Security Act of 1950. It would have been a comparatively simple matter for Congress to indicate an intent to give such power to the Attorney General. There is nothing in the legislative history, however, to show that Congress did intend such exclusive right. The Zapp case established that the admission to bail was discretionary with the Attorney General. The Potash case held that such discretion is not an unbridled one.

It is equally clear since the Potash case, supra, that one who claims an abuse of such discretion has the burden of proving abuse by clear and convincing evidence. This is clearly set forth in 169 F.2d at page 751: "* * * The discretion of the Attorney General which we held to exist in the Zapp case is interpreted as one which is to be reasonably exercised upon a consideration of such factors, among others, as the probability of the alien being found deportable, the seriousness of the charge against him, if proved, the danger to the public safety of his presence within the community, and the alien's availability for subsequent proceedings if enlarged on bail. However, in any consideration of his denial of bail it should always be borne in mind that the court's opinion as to whether the alien should be admitted to bail can only override that of the Attorney General *where the alien makes a clear and convincing showing* that the decision against him was without a reasonable foundation. In the absence of such proof, the administrative determination is final. If the Eighth Amendment to the Constitution is considered to have any bearing upon the right to bail in deportation proceedings, and this has been denied, it is our opinion that the provisions of that Amendment and any requirement of the due process provisions of the Fifth Amendment will be fully satisfied if the standards of fairness and reasonableness we have set forth regarding the exercise of discretion by the Attorney General are observed." (Emphasis supplied.)

■ In approaching questions involving the admission or expulsion of aliens it should be remembered, and it has been repeatedly affirmed by the courts, that this function may be conferred upon the executive branch of the government by the Congress and the judiciary has only such authority to interfere as may be delegated to it.

In Wong Wing et al. v. U. S., 163 U.S. 228, 16 S.Ct. 977, 978, 41 L.Ed. 140, the court stated:

"But this court held, in the case of Fong Yue Ting v. U. S., 149 U.S. 698, 13 S.Ct. 1016 [37 L.Ed. 905], that the right to exclude or to expel aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, is an inherent and inalienable right of every sovereign and independent nation; that the power of congress to expel, like the power to exclude, aliens or any class of aliens from the country, may be exercised entirely through executive officers; and that the said sixth section of the act of May 5, 1892 [8 U.S. C.A. § 287], was constitutional and valid.

* * * * * *

"'The power of congress to exclude aliens altogether from the United States,

or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.'"

The same thought is expressed in U. S. ex rel. Carapa v. Curran, etc., 2 Cir., 297 F. 946, 952, where the following language is used:

"It is, however, to be observed that the provision above quoted applies to the case of a person arrested or imprisoned on process issued from any court of the United States in any civil action. An alien who is denied the right to enter the United States and who is held by the immigration authorities for deportation is not held on process issued 'from any court of the United States in any civil action.' On the contrary, he is held by the immigration authorities under authority conferred upon them by the act of Congress regulating immigration. The deportation proceeding is sui generis, and the authority of the immigration officials is not derived from the courts as the result of any civil action whatever. If a District Court, on an application for a writ of habeas corpus, inquires into the legality of a deportation order and finds that the immigration authorities have not exceeded their authority but that they have proceeded lawfully and has remanded the alien to their custody, he is in their custody, not because of any authority which those officials have derived from the court, but under the authority conferred upon the Executive by the acts of Congress.

"The power to admit to bail is not a mere matter of practice. In the United States the right to bail is thought to be dependent on statutes. 3 Am. & Eng.Encyc. of Law 591; 6 C.J. 894."

See also 3 C.J.S., Aliens, § 33, p. 590 et seq.

In 1904 in the case of U. S. ex rel. Turner v. Williams, etc., 194 U.S. 279, 24 S.Ct. 719-724, 48 L.Ed. 979, involving an anarchist. Mr. Chief Justice Fuller, speaking for the court, among other things said: "* * * The flaming brand which guards the realm where no human government is needed still bars the entrance; and as long as human governments endure they cannot be denied the power of self-preservation, as that question is presented here."

■ Both in U. S. ex rel. Zapp v. District Director, etc., supra, and U. S. ex rel Potash v. District Director, etc., supra, it is to be noted that one of the factors to be considered in determining the admissibility of an alien to bail is the danger to the community by the presence of the alien. I assume the same rule that applies to one who has smallpox applies as well to an alien who is being held pursuant to a warrant for his arrest charging him with being deportable because of membership in an organization that advocates the overthrow of the government by force and violence. Both are menaces to public safety and security.

■ In the instant cases the court repeatedly, following the reasoning of the Potash case, invited petitioners to produce any evidence that would rebut the presumption of regularity flowing from the issuance of the warrant attached to the return. This warrant stated that the Attorney General was holding the petitioners without bail pending deportation proceedings because of their membership in the Communist Party of the United States. Such evidence was essential to overcome the presumption and to prove an abuse of discretion by the Attorney General. All refused to proffer any evidence whatsoever and stated through counsel that they rested their cases upon the written record. Thus the court had before it no evidence whatsoever upon which it could make any findings on the question of the abuse of discretion.

■ The court must assume that the acts of the Attorney General were regular and free from any abuse of discretion in the absence of evidence to the contrary. It cannot override the opinion of the Attorney General where the alien fails to make a clear and convincing showing that the decision against him is without reasonable foundation.

The petitions for writ of habeas corpus are hereby discharged.

22

The United States Attorney is directed to prepare forthwith for my signature proper orders of dismissal in conformity with the opinions herein expressed.