**Nelson LIU, Petitioner,**

v.

**Joseph MONGIELLO, Respondent.**

Civ. A. No. 78–0511.

United States District Court,
District of Columbia,
Civil Division.

May 10, 1978.

Christopher M. Kerns, Burch, Kerns & Klimek, P.C., Washington, D.C., for petitioner.

Philip Wilens, Chief, Govt. Regulations and Labor Section, Crim. Div., James P. Morris, Richard I. Chaifetz, Dept. of Justice, Washington, D.C., for respondent.

## MEMORANDUM

OBERDORFER, District Judge.

This matter is before the Court on an Amended Petition for a Writ of Habeas Corpus by an alien seaman facing imminent deportation to Taiwan, China. The petitioner filed his original application for a Writ of Habeas Corpus on March 22, 1978. On the next day, March 23, 1978, the Court filed a Memorandum and Order staying deportation of petitioner and directing respondent, the District Director of the Naturalization and Immigration Service, to make, and to furnish to petitioner, a reasoned determination as to whether he should be detained, released on bond, or be subject to supervision on conditions in the nature of a release on bond.

In the period since March 23, the respondent has released petitioner on an adminis-

trative bond provided that he remains in the District of Columbia and counsel for both parties have submitted supplemental memoranda and made oral arguments.

Respondent has vigorously argued that petitioner has failed ·to state a basis on which the petition may be granted. Respondent emphasizes that petitioner is an alien crewman who jumped ship several years ago, was apprehended, and found to be deportable. Having been granted an opportunity to leave voluntarily, petitioner failed to do so, and was ordered deported, which order became final when petitioner failed to appeal it. When, on March 10, 1978, petitioner was arrested for deportation, he was deportable.[1] His requests to respondent to reopen the deportation order on account of his intervening marriage to a U.S. citizen were, respondent urges, properly denied without a hearing, because, as an alien crewman, he was not entitled to any adjustment of his status because of marriage or otherwise. Nor, according to respondent, was the decision not to reopen the deportation order an abuse of discretion because there was no license or other attested or notarized proof of his marriage. Furthermore, respondent represented that petitioner had worked illegally, was under indictment in the Superior Court for the District of Columbia for conspiracy to commit bribery, and had failed to file annual registration forms as required by law. Since, according to respondent, a judicial reopening of a deportation order must be denied if there is any evidence to support that order, and there was plenty of evidence to support the order here, this Court should dismiss the petitioner's application.

In response, petitioner has countered by redefining the relief he seeks and the grounds for it. In his revised pleadings, petitioner has apparently abandoned his effort to reopen the outstanding deportation order. His narrowed objective is a stay of deportation until visa arrangements can be made for him to depart the United States and reenter as the spouse of a U.S. citizen. In addition, petitioner seeks a stay of deportation until he has been tried on the bribery conspiracy charges pending against him in Superior Court.

In support of the revised application, petitioner invokes the Court's power to stay a deportation order where the administrative denial of such a stay was arbitrary and capricious.. The administrative denial here was arbitrary, capricious, and reviewable, he argues, because the facts recited by counsel in court were not considered administratively, many of the respondent's factual assertions are inaccurate (e. g., there is a marriage certificate in the administrative file), and respondent made no showing as to why many unmarried aliens originally ordered deported are permitted, upon proof of marriage to a U.S. citizen, to depart voluntarily and then to reenter as a citizen's spouse, while petitioner is not so permitted. Finally, petitioner makes, for the first time, the claim that deportation of him now will violate his right to a speedy trial guaranteed to him by the Sixth Amendment to the U.S. Constitution.[2]

■ The Court has considered and determined that respondent is correct in his contention that petitioner has failed to state a basis for relief with respect to the decision not to reopen the deportation order. And the reasons which foreclose such relief extend to petitioner's effort to achieve the same result by a stay for the purpose of permitting a voluntary departure and reentry: petitioner did not, in fact, file annual alien registration forms, had worked illegally, was under a longstanding deportation order, and had been given, and had abused the privilege of voluntary departure several years previously. These reasons are sufficient justification for any differences which

---

1. Petitioner was also arrested at that time in connection with an indictment returned in September 1977 by a grand jury in the Superior Court of the District of Columbia charging him with participation with others in a bribery conspiracy here.

2. Petitioner also contends, in the alternative, that if the deportation order is based on his indictment, he is being prejudiced in violation of his constitutional right to due process of law. *Bufalino v. Kennedy,* 116 U.S.App.D.C. 266, 322 F.2d 1016 (1963).

may exist between respondent's treatment of petitioner for the purpose of voluntary departure and reentry and the treatment of other aliens.

A different issue is raised, however, by petitioner's unusual effort to stay in the United States so that he can face trial in the District of Columbia on bribery conspiracy charges. Not every deportable alien would make this choice. But, on reflection, the Court finds merit in petitioner's claim that he has a constitutional right to a speedy trial (and to the assistance of counsel in preparation thereof) which deportation now would violate.

The criminal trial, originally set for May 8, 1978, is now scheduled for August 21, 1978. The preparation of any trial takes time, and a conspiracy trial can involve complications for defense counsel which require even more time than other preparations.

In apparent and commendable recognition of petitioner's constitutional right to speedy trial, the respondent offered at the hearing in this Court to permit petitioner, after deportation, to return to the United States from Taiwan (at petitioner's expense, of course) in time for such a trial, including a reasonable time to prepare for it. But it is respondent's plan to deport petitioner to Taiwan in the interim. Such a deportation now would add thousands of miles of distance and thousands of dollars of expense to all the other burdens which face any accused preparing to stand a trial as potentially complex as one involving a bribery conspiracy charge.

■ In light of respondent's concession and a review of the authorities, the Court is satisfied that an alien accused in a criminal prosecution "enjoy[s] the right to a speedy and public trial . . . [in the] district wherein the crime shall have been committed, . . . and to have the Assistance

of Counsel for his defense." U.S.Const., Amendment VI. *See Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140 (1896).[3] The Supreme Court has described a speedy trial guaranteed by the Sixth Amendment as "one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. · 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967). In *Klopfer*, the Court traced the evolution of that right from the Magna Charta. In the context of that history, the Court examined the validity of a North Carolina procedure known as *nolle prosequi* with leave. That procedure permitted North Carolina prosecutors to leave an indictment outstanding without imposing any restraint on the accused *and* without ever either discharging him or bringing him to trial. In *Klopfer*, a professor, having endured a mistrial on a charge of trespassing at a segregated restaurant, unsuccessfully petitioned to have the case against him "permanently concluded . . . as soon as is reasonably possible." *Id.* at 218, 87 S.Ct. at 991. When the North Carolina Supreme Court rejected Klopfer's claim that the trial court ruling violated his constitutional right to a speedy trial, the U. S. Supreme Court disagreed. It interpreted the North Carolina ruling as an erroneous decision "that the right to a speedy trial does not afford affirmative protection against an unjustified postponement of trial for an accused discharged from custody . . . ." *Id.* at 219, 87 S.Ct. at 991. The Court based its ruling on its observation that:

> The petitioner is not relieved of the limitations placed upon his liberty by this prosecution merely because its suspension permits him to go 'whithersoever he will.' The pendency of the indictment may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular caus-

**3.** " . . . [A]ll persons within the territory of the United States ["even aliens"] are entitled to the protection guaranteed by" the Sixth Amendment. *Wong Wing* was cited with approval in *Harisiades v. Shaughnessy*, 342 U.S. 580, 586, 72 S.Ct. 512, 96 L.Ed. 586 (1951) as

holding that in criminal proceedings against an alien, he must be accorded the protections of the Sixth Amendment and that in this respect "the alien . . . stands on an equal footing with citizens." *See also Id.* at p. 599, n. 6, 72 S.Ct. 512, Douglas, J., dissenting.

es. By indefinitely prolonging this oppression, as well as the 'anxiety and concern accompanying public accusation,' the criminal procedure . . . in this case . . . denies the petitioner the right to a speedy trial . . . . *Id.* at 221–2, 87 S.Ct. at 992–3.

There are obvious differences between the situation of *Klopfer,* who was a professor charged under North Carolina law for trespass of a restaurant in connection with an antisegregation sit-in, and the situation of this alien seaman who has eluded deportation for over four years, and may never have the remotest intention of engaging in speech, associations, or legitimate unpopular causes. And there is at least a theoretical danger that, if his petition were granted, other aliens confronted with deportation may be encouraged to commit indictable offenses in bizarre preference for life in a U. S. prison to deportation to an even less palatable fate abroad. But the chronology here contradicts any suggestion that this petitioner engaged in any such form of malingering to avoid deportation. Moreover, if the respondent were seriously concerned about this possibility of abuse, it is peculiarly within his power (or that of his superior, the Attorney General of the United States) to terminate any prosecution and, then, proceed with the deportation.

If, in May, an Attorney General had threatened physically to remove to Taiwan an accused scheduled for trial in August on bribery conspiracy charges, a court should have no difficulty in barring consummation of such a threat on Sixth Amendment grounds, among others. Such a physical removal would obviously intrude upon the right of the accused to a speedy and public trial in the district of the crime as well as his constitutional right to assist, and be assisted by, counsel in preparation of his defense. If an accused were an otherwise deportable alien, and were being deported to Mexico or Canada, or if the trial date were unsettled or remote, an Attorney General might be able to justify deportation as consistent with a reasonable opportunity for the accused to return to defend against the indictment. But that is not this case.

Here, the trial date is August 21, 1978, and the destination is Taiwan.

█ The Supreme Court has ruled and recently reiterated that:

the speedy trial right was designed . . . : (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *Barker v. Wingo,* 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972); *United States v. MacDonald,* —— U.S. ——, ——, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978).

Respondent's failure either to stay deportation until an August 21 trial, or dismiss the indictment before deportation, is an arbitrary and capricious violation of petitioner's Sixth Amendment right to a speedy trial with the assistance of counsel for his defense.

This Court has jurisdiction to order the respondent to grant such a stay. (8 U.S.C. § 1329; *Cheng Fan Kwok v. Immigration and Naturalization Service,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Shodeke v. United States,* 391 F.Supp. 219, 221 (D.D. C.1975)). An order to this effect will be entered.