**Vladimir COLLAZO–LEON, Plaintiff,**

v.

**U.S. BUREAU OF PRISONS, Kathy Hawk, Director, Federal Bureau of Prisons, and Larry Cox, Warden, MDC Guaynabo, Defendants.**

**Civ. 94–1616CCC.**

United States District Court, D. Puerto Rico.

June 17, 1994.

Lugo & Roldán Burgos, Marcia G. Shein, M.S., for plaintiff.

Guillermo Gil, U.S. Atty., María Hortensia Ríos–Gándara, Asst. U.S. Atty., for defendants.

**MEMORANDUM OPINION**

CEREZO, Chief Judge.

This memorandum opinion is issued to set forth the reasons for the Court's order granting petitioner's application for a writ of habeas corpus filed on May 3, 1994, pursuant to 28 U.S.C. § 2241.

Petitioner Vladimir Collazo–León, a pretrial detainee at M.D.C. Guaynabo who has been awaiting trial for drug charges in Criminal No. 93–382, filed on December 8, 1993, was separated from the general population and placed in isolation for a period of ninety (90) days. After a disciplinary hearing, the discipline hearing officer (DHO) determined that Collazo–León committed prohibited acts 102 and 216. The first of these acts involved a greatest category offense under 28 C.F.R.

§ 541.13 and referred to an attempted escape incident reported by a correctional officer.[1] The sanction imposed by the DHO for this act was sixty (60) days of disciplinary segregation and the loss of visiting privileges for six months. The DHO also found that the petitioner incurred in another prohibited act. This one, classified in the regulation as a high category offense, involved offering a bribe to a correctional officer. As a sanction for this offense, he was ordered placed in isolation for another thirty (30) days and deprived of phone privileges for six (6) months.

The application for the writ of habeas corpus is based on two fundamental grounds: (1) that the disciplinary measures taken in reference to the misconduct charges of the pretrial detainee constitute punishment in violation of substantive due process of law and that (2) his Sixth Amendment right to confront witnesses was violated in the administrative disciplinary proceeding. The federal respondents' sole response is found in their motion enclosing supplemental documents filed on May 23, 1994 (docket entry 8). They contend that the sanctions imposed were incident to the correctional institution's legitimate purpose to provide a safe and orderly environment and that petitioner was afforded the due process owed him in prison disciplinary hearings, under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Both parties have approached the substantive due process issue relying on their particular reading of *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), which examined the scope of the rights of pretrial detainees during the period of confinement prior to a determination at trial of their guilt or innocence. The *Wolfish* decision clearly held that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Id.,* at p. 535–36, 99 S.Ct. at p. 1872. Thus, the inquiry in *Wolfish* centered on whether the restrictions placed or measures taken during the pretrial detention of a person amounted to punish-

---

1. Correctional Officer Rodney Stuart subscribed an affidavit on March 16, 1994 stating that three days before, while escorting Collazo–León to the visiting room, said inmate told him that "if I could find a way for him to make it to the avenue, he would get me a million".

ment. This fundamental principle of fairness is not new. As early as 1896, the Supreme Court in *Wong Wing v. United States*, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896), cited with approval in *Wolfish, supra*, 441 U.S. at p. 535–36 n. 17, 99 S.Ct. at p. 1872, n. 17, held that "it is not consistent with the theory of our government that the legislature should, after having defined an offense as an infamous crime, find the fact of guilt and adjudge the punishment by one of its own agents." *Id.*, 163 U.S. at p. 237–39, 16 S.Ct. at p. 981. Specifically, the Court found that a statute which provided for the infliction of punishment by means of hard labor, imposed upon Chinese aliens after a summary hearing, without a prior adjudication of guilt in a judicial trial, violated the constitutional right not to be held to answer to a crime unless upon an indictment of a grand jury and the guarantee not to be deprived of life, liberty or property without due process of law.

If to be constitutionally permissible, punishment can only follow a determination of guilt after a trial, the courts must then distinguish between punitive measures and regulatory restraints in the situation of a pretrial detainee. In *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 148–51, 83 S.Ct. 554, 557–58, 9 L.Ed.2d 644 (1963), the Court outlined the factors to be considered in making this distinction. Unless the intent to punish is evident or expressly stated by prison officials, the determination of punitive versus regulatory turns on "whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." As restated in *Wolfish, supra*, 441 U.S. at p. 538–39, 99 S.Ct. at p. 1874, if the particular restriction is not reasonably related to a legitimate governmental objective, if it is arbitrary or purposeless, it may be inferred that the restriction or action was intended to punish. If such were the

conclusion, the particular measure, restriction or action "may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* When the action taken is provided for by statute, courts probe into the legislative history to determine whether the governmental action is in the nature of punishment. The inquiry is then addressed to determine whether the legislature intended the measure or action to be punitive.

Respondents claim their goal is legitimate under 18 U.S.C. § 4042, the statutory provision that grants the Bureau of Prisons the authority to discipline all persons charged with or convicted of offenses against the United States. Whether the discipline in this particular case constitutes punishment of pretrial detainee Vladimir Collazo–León is a narrower question. No one disputes the power granted prison officials to provide for the discipline of those entrusted to their custody. When discipline goes beyond its proper sphere and trespasses into the sphere of punishment of a pretrial detainee, then courts confront, inevitably, the constitutional claim, based on violation of substantive due process of law, that punishment was imposed prior to a determination of guilt. Such is the claim before us. Petitioner contends that officials at MDC Guaynabo have justified his punishment under the guise of discipline.

Before scrutinizing the factual circumstances surrounding this claim, we will first consider the regulation of the agency involved set forth in 28 C.F.R. § 541.20, which deals with the justification for placement in disciplinary segregation. This regulation does not distinguish between pretrial detainees and convicted inmates. In its subsection (a), it provides as follows:

(a) Except as provided in paragraph (b) of this section, an inmate may be placed in disciplinary segregation only by order of the Discipline Hearing Officer following a hearing in which the inmate has been found to have committed a prohibited act in the Greatest, High, or Moderate Category, or a repeated offense in the Low Moderate Category. **The DHO may order placement in disciplinary segregation only when other available dispositions are inadequate to achieve the pur-**

pose of punishment and deterrence necessary to regulate an inmate's behavior within acceptable limits.

Subsection (d) of that same section provides for early termination of disciplinary segregation by a segregation review official upon finding that continuation in disciplinary segregation is no longer necessary "... for fulfilling the purpose of punishment and deterrence which initially resulted in the inmate's placement in disciplinary segregation status."

Here, as in *Mendoza–Martinez*, there is an express manifestation that the intent in enacting the provisions—statutory in *Mendoza–Martinez* and administrative in our case—was to punish. The clear language of the regulation, 28 C.F.R. § 541.20(a) and (d), reveals that disciplinary segregation was intended "to achieve the purpose of punishment and deterrence necessary to regulate an inmate's behavior within acceptable limits." It is interesting to note that even in the face of such a plain statement of purpose, the segregation is established as the exception, exercised only when other available dispositions are inadequate to achieve punishment and deterrence. *See* 28 C.F.R. § 541.20(a). The end result is always to deter and to punish. "Retribution and deterrence are not legitimate non-punitive governmental objectives." *Wolfish*, 441 U.S. at 539 n. 20, 99 S.Ct. at 1874, n. 20. In giving an example of a practice which compels the conclusion that the purpose for which it was imposed was to punish, the Court observed that "loading a detainee with chains and shackles and throwing him in a dungeon may insure his presence at trial and preserve the security of the institution ... [b]ut it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished with so many alternatives and less harsh methods, would not support the conclusion that the purpose for which they were imposed was to punish." *Wolfish, supra,* at p. 539 n. 20, 99 S.Ct. at p. 1874, n. 20.

Aside from the express manifestation in the regulation that disciplinary segregation is intended to fulfill the purpose of punishment and deterrence of an inmate, the severity of the sanction itself upon a pretrial detainee charged with misconduct, as to whom no attempt is made to deal with his disciplinary problem by means of less drastic actions, compel the conclusion that the purpose in segregating is to punish. The severe consequences which attach to segregation are reflected by the provisions of § 541.20 which require periodic review of cases of inmates in isolation, within a short time span, including psychiatric or psychological assessments. Despite the guarantees of basic living levels of decency and humane treatment for segregated time in inmates contemplated by § 541.21, it is undeniable that one who spends time in solitary confinement, with only one hour allowed daily to exercise, faces a painful reality. *See* § 541.21(c)(6).

This brings us to the specific sanction imposed upon Collazo–León once the DHO determined that he believed what was stated by the correctional officer in an affidavit concerning his alleged attempt to bribe and to escape. He was placed in solitary confinement for ninety days and deprived of phone and visitation privileges for six (6) months. Magistrate Judge Arenas, at page 4 of his Report and Recommendation, concluded that the segregation was reasonable as regulatory "because of the nature of the infraction." Absent in this conclusion was the fact of the manifest intent to punish and deter which appears on the face of the regulation itself, § 541.20(a) and (d). Also lacking was an analysis of the factors set forth in *Mendoza–Martinez* to determine whether or not the sanction was punitive in nature or regulatory in character. The federal respondents have not claimed that, because of the nature or gravity of the infraction, the segregation triggered by it should be considered reasonable as regulatory. In fact, that is not one of the criteria taken into account by the Supreme Court in determining whether the sanction is classified as punitive or regulatory. What the government has argued is that prison officials have a legitimate goal in imposing segregation in this case, to wit: to provide a safe and orderly environment for inmates. One must ask: How will prison officials provide for that safe and orderly environment once Vladimir Collazo–León's ninety-day seg-

regation period is served and he returns to the general population? At the end of those ninety days Vladimir Collazo–León will represent to prison officials the same risk of flight and the same security hazard that he did when they determined that his conduct justified placing him in isolation. Upon the expiration of the ninety-day segregation and upon his reentry to the general population, prison officials must, inevitably, for the very same reasons of security and order claimed, deal with measures less harsh than isolation to confront the security risk that Vladimir Collazo–León represents to them during the remainder of his pretrial detention.

Thus, we come full circle. Not only is the prison regulation involved punitive in nature because of the clear expression to that effect in its very language, but, the absence of an alternative purpose rationally connected to it, of a reasonable relationship to a legitimate governmental goal, lead us also to the conclusion that the intended purpose of imposing segregation on pretrial detainee Vladimir Collazo–León in this case was solely to punish him.

Since petitioner, *as a pretrial detainee,* has a constitutional right to be free from punishment, since the regulation [§ 541.20(a)] which provides the justification for segregation of the detainee expressly states that the purpose is to punish and deter, and, since the particular circumstances surrounding the imposition of the sanction of isolation for a ninety-day period reveal that less drastic resources were not considered but will have to be taken into account, inevitably, at the end of the ninety-day segregation, we conclude that the sanction imposed upon this pretrial detainee constitutes punishment and serves no legitimate regulatory purpose in the effective management of the correctional institution.

For the reasons stated,[2] the Court in its order of June 16, 1994 awarded the writ of habeas corpus to pretrial detainee Vladimir Collazo–León and order his discharge from segregation and restoration of visitation and telephone privileges. For these same rea-

sons, the Urgent Motion to Stay was denied in a footnote order.

SO ORDERED.

---

2. Inasmuch as this issue is dispositive, we need not reach the other grounds advanced by peti-   tioner in support of his application for the writ.