DENNIS, Circuit Judge,
concurring in part and dissenting in part.
I concur in vacating the final order of January 13, 1999 and the preliminary order regarding Garza-Pacheco, and I agree in part with the reasoning of the majority opinion. I disagree, however, with part of the reasons assigned by the majority and with the limits it imposes upon further proceedings in the district court.
I concur in the following parts of the majority opinion: (1) Part I holding that the plaintiffs have standing; (2) Part II insofar as it recognizes that LPRs are authorized to seek employment and work in the United States; that a person’s LPR status, including its attendant benefits such as the right to work and to have documentation certifying that right and the right to be in the United States, does not terminate until an order of deportation is affirmed by the Board of Immigration Appeals (BIA) or otherwise becomes administratively final; and that the district court erroneously relied upon the McNary Memorandum as establishing judicially enforceable rights; and (3) Part IV with respect to this court’s appellate jurisdiction to review the Garza-Pacheco order.
I respectfully disagree with the majority opinion in the limits it places on the remand instructions and in the following respects:
1.
An alien who is a lawful permanent resident of the United States, and remains physically present here, is a person within the protection of the Fifth Amendment who may not be deprived of his life, liberty, or property without due process of law. United States v. Verdugo-Urquidez, 494 U.S. 259, 271, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990); London v. Plasencia, 459 U.S. 21, 32-34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); Kwong Hai Chew v. Colding, 344 U.S. 590, 596, 73 S.Ct. 472, 97 L.Ed. 576 (1953); Wong Wing v. United States, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896). Accordingly, he may not be deported without notice, a hearing, and an opportunity to be heard, before such determination is made. Chew, 344 U.S. at 597-98, 73 S.Ct. 472. Likewise, because LPRs in exclusion proceedings must also be accorded procedural due process, Landon, 459 U.S. at 33-37, 103 S.Ct. 321, the same constitutional protections extend to resident aliens seeking reentry after a brief trip abroad not meaningfully interruptive of the alien’s continued United States residence. Zadvydas v. Underdown, 185 F.3d 279, 295 & n. 17 (5th Cir.1999) (citing Landon, 459 U.S. at 32-24, 103 S.Ct. 321); see also Verdugo-Urquidez, 494 U.S. 259, 271, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990)(citing cases recognizing various constitutional rights of resident aliens: e.g., Bridges v. Wixon, 326 U.S. 135, 148, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945)(resident aliens have First Amendment rights); Wong Wing, 163 U.S. at 238, 16 S.Ct. 977 (resident aliens entitled to Fifth and Sixth Amendment rights); Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)(Fourteenth Amendment protects resident aliens)). Although an LPR may later be found excludable or deporta-ble, he is, nonetheless, entitled to due process before such determination is made. Chew, 344 U.S. at 597-98, 73 S.Ct. 472. “Although Congress may prescribe conditions for his expulsion and deportation, not even Congress may expel him without notice and a fair opportunity to be heard.” Id.
Consequently, an alien’s LPR status includes elements of liberty and property rights of which he cannot be deprived without due process of law. For example, the right to seek and engage in employ *993 ment, to travel, and to qualify for other benefits and entitlements are attributes or inherent characteristics of LPR status. Therefore, the government cannot deprive an LPR of these rights or entitlements or significantly damage them without first affording the LPR due process of law guaranteed by the Fifth Amendment. For instance, the INS and other government agents may not, without affording an LPR such due process of law, (1) confiscate his green card without providing him a reasonably adequate substitute document that will afford him equal access to all attributes of LPR status or (2) deny an LPR readmission. Of course, an LPR can be investigated, arrested, or prosecuted for a crime just as any other alien or citizen. But an LPR cannot be deprived of any of the attendant rights of his status without due process of law, because the Due Process clause of Fifth Amendment does not acknowledge any distinction between citizens and resident aliens. See Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954) (“[Because] an alien who legally became part of the American community ... is a ‘person,’ [he] has the same protection for his life, liberty and property under the Due Process Clause as is afforded to a citizen.”); Bridges, 326 U.S. at 161, 65 S.Ct. 1443 (Murphy, J., concurring) (“None of these provisions acknowledges any distinction between citizens and resident aliens.”).
2.
Accordingly, I do not agree that an LPR’s right to adequate documentation to verify his right to work and remain in the country is totally within the express discretion of the Attorney General. Although the Attorney General may prescribe reasonable regulations for administrative purposes, not even the Attorney General may deprive an LPR of his rights or entitlements protected by the Fifth Amendment without affording him.due process. Similarly, although the INS may enjoy some discretion in providing documentary evidence of LPR status, it may not do so in a way that deprives or damages an LPR’s status and its attendant rights and entitlements without complying with the requirements of the Fifth Amendment. Thus, although the courts may not have jurisdiction to review the exercise of discretion in matters of parole and documentation by the Attorney General or the INS, the courts most assuredly do have the power and duty to hear cases under the Constitution involving the alleged deprivation of life, liberty, or property of a resident alien without due process of law. See, e.g., Johnson v. Robison, 415 U.S. 361, 374, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (holding that provisions of the Veterans’ Readjustment Act, while precluding judicial review of administrative decisions, did “not extend the prohibitions of that section to actions challenging the constitutionality of laws”); Parra v. Perryman, 172 F.3d 954, 957 (7th Cir.1999) (recognizing that although a court may not be able to review a decision implementing 1226, 1226(e) “does not purport to foreclose challenges to 1226 itself’). Moreover, I do not read any of the statutes or regulations as being in conflict with these constitutional principles. Consequently, I would remand the case for further proceedings in accordance with the requirements of the Fifth Amendment, applying the laws and regulations consistently with the constitutional framework.
3.
Finally, I dissent from the limitations that the majority places upon further proceedings and relief with respect to Garza-Pacheco. From the available information, it is unclear that Garza-Pacheco should be excluded from the class. The Appellants contend that Garza-Pacheco’s case is not sufficiently related for him to be a member of the class because Garza-Pacheco was not an LPR at the time the District Court granted him preliminary relief.
But, it is not clear that he was given notice and an opportunity to be heard before his green card was confiscated and *994 before he was initially ordered deported or that his second deportation was administratively final at the time the district court granted him preliminary relief. Consequently, Garza-Paeheco’s case should be remanded to the district court for further proceedings and resolution of these issues.
Accordingly, I would vacate the district court’s orders and remand the case for further proceedings consistent with the foregoing reasons.