**UNITED STATES of America, Plaintiff,**

v.

**TSUDA MARU, and her fishing gear, furniture, appurtenances, stores, fish, and cargo, Defendant,**

and

**Hoko Fishing Company, Ltd., Claimant.**

**Civ. No. A79–031.**

United States District Court, D. Alaska.

Nov. 1, 1979.

---

Alexander O. Bryner, U. S. Atty. for Alaska by Dan E. Dennis, Asst. U. S. Atty., Anchorage, Alaska, for plaintiff.

John H. Bradbury, Anchorage, Alaska, for claimant and defendant.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on claimant's motion for a declaratory judgment that the Fishery Conservation and Management Act of 1976 (FCMA), 16 U.S.C. §§ 1801–82 (1976), violates the equal protection component of the Fifth Amendment of the U.S. Constitution because the FCMA discriminates against aliens. The facts of this case are described at length in a previous opinion. *United States v. Tsuda Maru*, 470 F.Supp. 1223 (D.Alaska 1979), and thus will not be reiterated here.

The FCMA asserts United States' jurisdiction for the purpose of managing fisheries resources over a zone contiguous to the territorial sea and extending seaward for 200 miles. 16 U.S.C. § 1811. The FCMA establishes two classes of fishing, fishing by vessels of the United States and fishing by vessels other than vessels of the United States. 16 U.S.C. § 1802(12), (25). Foreign fishing, i. e., fishing by vessels other than vessels of the United States, is not authorized unless the vessel's nation has entered into a governing international fishery agreement with the United States and the vessel has been issued a permit by the Secretary of Commerce. 16 U.S.C. § 1821(a), (b). The FCMA requires every such international agreement to acknowledge the exclusive fishery management authority of the United States. 16 U.S.C. § 1821(c). *United States v. Tsuda Maru*, 470 F.Supp. at 1227.

The equal protection challenge in this case is a novel one and somewhat difficult to analyze because of the unique nature of the fishery conservation zone, a zone beyond the territorial boundaries of the United States where the United States asserts jurisdiction for the limited purpose of conserving and managing fisheries. Adding to the complexities of the case are the U.S. Supreme Court's pronouncements that the equal protection component of the due process clause, and especially the equal protection doctrine protecting aliens, is not completely coextensive with the equal protection clause of the Fourteenth Amendment. *Hampton v. Mow Sun Wong*, 426 U.S. 88, 100, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976). *But see Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

At the threshold[1] the United States argues that the distinction drawn by the

---

1. Although the Government has not challenged the standing of the claimant, a foreign corporation, to challenge a statute on the ground that it unconstitutionally discriminates against aliens, the court has had that issue briefed and has examined it on its own motion. The court has determined that the corporation has standing to make this challenge. The corporation is clearly injured by the burden placed on foreign fishing and although the corporation is not an alien it has a special relationship with its alien shareholders so as to give it standing to make this claim. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Carey v. Population Services International*, 431 U.S. 678, 97

FCMA is not along alienage lines but is determined by the documentation of the vessel. The court agrees with the claimant that the substantive effect of the definition of foreign fishing in the FCMA is to apply to aliens a regulatory scheme not generally applied to citizens because a foreign owned vessel cannot be documented as a United States vessel. 46 U.S.C. § 11. That the Act discriminates [2] against aliens is evidenced by the structure of the Act and the policy statements in the Act itself. 16 U.S.C. § 1801(a)(3), (7), § 1801(b)(3), (6). The Congress made a specific finding that "[a] national program for development of fisheries which are underutilized or not utilized by United States fishermen, including bottom fish off Alaska, is necessary to assure that our *citizens* benefit from the employment, food supply, and revenue which could be generated thereby." 16 U.S.C. § 1801(a)(7). (emphasis added). The legislative history contains many expressions of the intent of the Congressional supporters to promote domestic fishing by regulating, reducing and in some cases eliminating foreign fishing in the zone. House Rep.No.445, 94th Cong., 2nd Sess. *as reprinted* in 2 U.S.Code, Congressional and Administrative News, p. 593 (1976). Many supporters of the Act would no doubt be very disappointed if the Act did not have the effect of discriminating against aliens fishing within the 200 mile limit. These expressions of purpose and intent meet the "purposeful discrimination" test found in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and *Village of Arlington Heights v. Metropolitan Housing Developmental Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). The constitutionality of the FCMA cannot be sustained by allowing the government to play semantic games with the Act's provisions, but is dependent on whether the doctrine protecting aliens against discrimination has any applicability to the case before this court.

 The court holds that the equal protection doctrine limiting the use of alienage classifications was not a bar to the enactment by Congress of the FCMA for two reasons. First, the underlying rationale of the doctrine limits its applicability to persons who have been admitted for permanent residence under the immigration laws. Second, the doctrine limiting alienage classifications does not apply when Congress exercises its powers in the area of immigration, naturalization, foreign policy and related areas.

The numerous cases which have struck down alienage classifications have all involved resident aliens.[3] *Truax v. Raich*, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); *Takahashi v. Fish & Game Comm'n.*, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Sugarman v. Dougall*, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973); *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976); *Examining Board v. Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976); *Nyquist v. Mauclet*, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977). These cases have often emphasized that resident aliens live in American communities, must obey our laws, pay taxes, serve in the armed forces, and have made significant contributions to our country. *In re Griffiths*, 413

---

S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). In *NAACP v. Alabama*, 357 U.S. 449, 458–60, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) the Court said, "We think that petitioner argues more appropriately the rights of its members, and its nexus with them is sufficient to permit that it act as their representative before this Court."

2. It should be emphasized, as the rest of the memorandum makes clear, that the court is not using the term "discriminates" here in its constitutional sense of "invidious" or "odious" discrimination. The court is only recognizing the fact that the Act intentionally draws a distinction between aliens and citizens.

3. *See* 8 U.S.C. § 1427 (1976).

U.S. at 722, 93 S.Ct. 2851; *Sugarman v. Dougall*, 413 U.S. at 645, 93 S.Ct. 2842; *Graham v. Richardson*, 403 U.S. at 376, 91 S.Ct. 1849. It is the burdens which resident aliens bear along with citizens that make absolute bars to aliens qualifying for work and educational opportunities so irrational. Resident aliens are in many respects just like citizens,[4] and classifications which disadvantage them will usually be subjected to strict judicial scrutiny. *But see, Ambach v. Norwick*, 441 U.S. 68, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979); *Foley v. Connelie*, 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978).[5] The philosophical and legal support for the doctrine is completely absent when a case involves a non-resident alien.

The claimant relies on *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950) and *Wong Wing v. United States*, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896) in urging the court to apply this doctrine to non-resident aliens. In *Wong Yang Sung* the Court held that an illegal alien must be given a fair hearing before he can be deported. The Court based its decision in part on constitutional considerations. 339 U.S. at 50–51, 70 S.Ct. 445. *Wong Wing* held that an illegal alien had a right to a jury trial. These cases simply stand for the proposition that all persons, illegal aliens included, have basic constitutional rights. They do not support the argument that the equal protection doctrine protecting resident aliens has relevance to non-resident aliens.

As a second reason for denying the claimant's motion, the court holds that the equal protection doctrine limiting alienage classifications does not apply to Congressional exercise of powers relating to foreign policy or immigration and naturalization. The doctrine simply makes no sense in that context because drawing distinctions between aliens and citizens is inherent to immigration policy and the conduct of foreign relations. In *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) the Court upheld a classification in the Immigration and Nationality Act of 1952 that was based on gender and legitimacy. Although the Court has shown little tolerance for such classifications, *see e. g. Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the Court upheld the statute because of the almost plenary power that the Congress has in immigration matters. The Court said:

---

4. A different question would be presented to the court if the complaining party was a resident alien prevented from fishing in the conservation zone.

5. One commentator has seen the *Ambach* and *Foley* cases as a retreat from strict scrutiny of state alienage classifications. *Ambach* upheld a state law excluding aliens who have not declared their intent to become citizens from serving as public school teachers. *Foley* upheld a state law excluding aliens from serving as state troopers.

> Although the Court purported to distinguish prior decisions applying strict scrutiny, these difficulties in reconciling *Foley* with those decisions suggest that the Court may proceed to limit them to their facts and henceforth may subject all discrimination against aliens to only minimal review. Aspects of both the majority opinion and Justice Stewart's concurrence underscore this possibility. The majority emphasized that the laws invalidated in prior decisions "struck at the noncitizens' ability to exist in the community" and were therefore "seem-

ingly inconsistent with the congressional determination to admit the alien to permanent residence." 435 U.S. at 295 [98 S.Ct. 1067]. In fact, only *Graham* itself had invoked federal preemption as an alternative rationale, 403 U.S. at 376–80 [91 S.Ct. 1848]; the subsequent decisions rested solely on equal protection. By exaggerating the reliance on preemption in previous cases, the majority was apparently attempting to minimize the equal protection significance of those cases. In his brief concurring opinion, Justice Stewart went out of his way to declare the instant decision "difficult if not impossible to reconcile . . . with . . . the reasoning and authority of some of our past decisions," 435 U.S. at 300 [98 S.Ct. 1067] (Stewart, J., concurring). He joined the Court's opinion only because he had become "increasingly doubtful about the validity of those decisions," id.

> Note, *A Dual Standard for State Discrimination Against Aliens*, 92 Harv.L.Rev. 1516, 1521 n. 34 (1979).

This Court has repeatedly emphasized that "over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens. *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 [29 S.Ct. 671, 676, 53 L.Ed. 1013] (1909); accord, *Kleindienst v. Mandel*, 408 U.S. 753, 766 [92 S.Ct. 2576, 2583, 33 L.Ed.2d 683] (1972). Our cases "have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. Mezei*, 345 U.S. 206, 210 [73 S.Ct. 625, 628, 97 L.Ed. 956] (1953); see, *e. g., Harisiades v. Shaughnessy*, 342 U.S. 580 [72 S.Ct. 512, 96 L.Ed. 586] (1952); *Lem Moon Sing v. United States*, 158 U.S. 538 [15 S.Ct. 967, 39 L.Ed. 1082] (1895); *Fong Yue Ting v. United States*, 149 U.S. 698 [13 S.Ct. 1016, 37 L.Ed. 905] (1893); *The Chinese Exclusion Case*, 130 U.S. 581 [9 S.Ct. 623, 32 L.Ed. 1068] (1889). Our recent decisions have not departed from this long-established rule. Just last Term, for example, the Court had occasion to note that "the power over aliens is of a political character and therefore subject only to narrow judicial review." *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n. 21 [96 S.Ct. 1895, 1904–1905, 48 L.Ed.2d 495] (1976), citing *Fong Yue Ting v. United States, supra* [49 U.S.] at 713 [13 S.Ct., at 1022]; accord, *Mathews v. Diaz*, 426 U.S. 67, 81–82 [96 S.Ct. 1883, 1892, 48 L.Ed.2d 478] (1976). And we observed recently that in the exercise of its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* [426 U.S.], at 80 [96 S.Ct., at 1891].

*Fiallo v. Bell*, 430 U.S. at 792, 97 S.Ct. at 1478. (footnote omitted)

The FCMA is not immigration legislation but it does involve a unique assertion of jurisdiction over the sea beyond the territory of the United States and is directly related to international relations. This is emphasized by the discussion of the Law of the Sea Conference found in the legislative history. House Rep.No.445, 94th Cong., 2nd Sess., *as reprinted* in 2 U.S.Code, Congressional and Administrative News, pp. 593, 596–602 (1976). The Fifth Amendment equal protection doctrine does not prohibit the Congress from distinguishing between citizens and aliens in the exercise of powers relating to foreign policy and to Congress' power to place conditions on the entry of aliens into special jurisdictional zones such as the conservation zone. If the Congress could not draw such lines between citizens and non-citizens it is difficult to imagine how the country could conduct foreign relations.

Accordingly IT IS ORDERED:

THAT claimant's motion for a declaratory judgment that the Fishery Conservation and Management Act is unconstitutional because it discriminates against aliens is denied.