Van Maurice TRAN, Plaintiff,

v.

COMMONWEALTH OF THE NORTH-
ERN MARIANA ISLANDS; Lorenzo I.
Guerrero, Governor; Robert C. Naraja,
Attorney General; and Eric Smith, As-
sistant Attorney General, Defendants.

Civ. A. No. 90–0009.

United States District Court,
Northern Mariana Islands.

Nov. 27, 1991.

V.K. Sawhney, Hill & Sawhney, Saipan,
MP, for plaintiff.

James B. Parsons, CNMI Asst. Atty.
Gen., Saipan, MP, for defendants.

DECISION AND ORDER
OF DISMISSAL

MUNSON, District Judge.

THIS MATTER came before the Court
on Monday, October 28, 1991 for hearing of
Defendants' motion to dismiss this case for
lack of subject matter jurisdiction pursuant
to Fed.R.Civ.P. 12(b)(1). Plaintiff was rep-
resented by Mr. V.K. Sawhney of Hill &

Sawhney. The Defendants Commonwealth of the Northern Mariana Islands, *et al.* (collectively "CNMI"), were represented by CNMI Assistant Attorney General James B. Parsons.

■ The issue presented is whether a Vietnamese "stateless" person who enters the CNMI on a tourist entry permit, seeks and is denied political asylum and refugee status both from the CNMI and the United States, is ordered by the CNMI judiciary to be deported, refuses to cooperate with any country which might be willing to receive him, and actively obstructs attempts by the CNMI government to deport him anywhere other than the United States, has a federal constitutional right to employment within the CNMI.

This is an action brought under 42 U.S.C. § 1983 averring violation by the CNMI of such a right. Plaintiff, Mr. Tran, also brings pendent claims alleging violations of the CNMI Constitution and the United Nations Trusteeship Agreement.[1] Because no constitutional right to employment within the CNMI exists under the circumstances of this action, there is no subject matter jurisdiction and the case is therefore DISMISSED.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Van Maurice Tran, born during 1952 in Vietnam of Vietnamese and French parents, fled to France with a forged French passport shortly after the communist triumph in 1975. His French citizenship status was cancelled in 1984 when he revealed his true identity to the French authorities, and Mr. Tran was granted French refugee status instead.

Plaintiff renounced his refugee status in 1988 because of alleged discrimination encountered in France. Cognizant that the CNMI is part of the United States, but unaware that the CNMI controls its own immigration, Mr. Tran entered the CNMI under tourist nonimmigrant entry permit number S–10088 dated July 12, 1988, expiring on September 1, 1988.[2] He intended to seek refugee status or political asylum in the United States once he was on American soil.

His refugee passport expired shortly after his arrival on Saipan. (Amended Complaint ¶ 12.) The CNMI instituted deportation proceedings on September 13, 1988. *Office of the Attorney General and the Office of Immigration and Naturalization of the Commonwealth of the Northern Mariana Islands v. Van Maurice Tran*, Civil Action No. 88–665 (Commonwealth Trial Court). Pending hearing on the matter, Plaintiff's counsel and the CNMI sought information on whether the United States would grant Mr. Tran political asylum or refugee status. The following United States agencies, among others, rejected his application: U.S. Consulate, Immigration and Naturalization Service (INS) Section, Hong Kong (because he was already within U.S. jurisdiction); U.S. State Department, Freely Associated States Section (because he was not in the Federated States of Micronesia, Republic of the Marshall Islands, or Belau); and the U.S. INS Office, Guam (because the CNMI is outside the jurisdiction of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*). The United States did not then decide the application on its merits.

At a hearing on November 2, 1988, the Hon. Ramon G. Villagomez, then Associate Judge of the former Commonwealth Trial Court,[3] ordered Mr. Tran's deportation as

---

**1.** Plaintiff's claims under the United Nations Trusteeship Agreement are not viable because they arose after the termination of the Trust Territory of the Pacific Islands as to the Northern Mariana Islands. Proclamation No. 5564 § 1, 51 Fed.Reg. 40,399 (Nov. 3, 1986), *reprinted in* 48 U.S.C.A. § 1681 (West 1987) statutory note at 572.

**2.** The CNMI Superior Court file contains some indication plaintiff entered the CNMI on June 1,

1988, in which case the entry permit would have been an extension. Order of Deportation, November 15, 1988; January 31, 1989 letter from plaintiff's counsel to then Attorney General Alexandro Castro, ¶¶ 1–2.

**3.** With the passage of the Commonwealth Judicial Reorganization Act of 1989, Pub.L. No. 6–25 (Northern Mariana Islands), the CNMI legislature completed its local court system on May 2, 1989 by creating a Supreme Court with appel-

soon as possible. A written Order of Deportation was signed November 15, 1988. A request for stay of deportation pending appeal and pending consideration by the United States of his application was denied by Judge Villagomez following a hearing on December 13, 1988.

An appeal to the Appellate Division of this Court, which then had jurisdiction pursuant to 48 U.S.C. § 1694b(a) (1988) and 1 CMC §§ 3301 *et seq.* (1984) (Commonwealth Code), was dismissed by stipulation on January 31, 1989. Plaintiff returned to the Commonwealth Trial Court, seeking an amendment to the deportation order permitting employment. Judge Villagomez denied the motion by order dated March 6, 1989 both on procedural timeliness grounds and on the merits, noting that "No entry permit shall be modified, nor shall a non-resident worker certificate be issued, which would permit a person who has entered the Commonwealth as a visitor or tourist to be employed in the Commonwealth." 3 CMC § 4332(b)(4) (1988 Supp.). Judge Villagomez rejected argument that the cited provision of the Non–Resident Worker's Act was inapplicable.

Following the original deportation order of November 15, 1988, the CNMI sought a country that would accept Mr. Tran. A CNMI Assistant Attorney General (AAG) met with the French Consul General in Honolulu and obtained advice that Tran could reapply for French refugee status, and possibly obtain French citizenship. When Tran's attorney was apprised of this, Mr. Tran immediately contacted the Consul General, informing him he had no desire to live in France. He wrote, "The main reason that I could not live in France was that I was continually discriminated against because of my obvious half caste status in employment and socially. So life was made intolerable for me in France." As for French citizenship based on his father, he never knew him and had no idea of his whereabouts.

The CNMI eventually sought an order in June 1990 to compel Plaintiff to fill out an

application and provide documentation to facilitate his return to France. The CNMI argued it was obvious Tran had no intention of returning to his home of 13 years, and would only cooperate if he were being deported to the United States, which federal authorities had thus far refused to allow. Tran responded that the deportation order placed the burden upon the CNMI of finding a country that would accept him, and that he was under no obligation to assist in his own deportation.

Several continuances were granted to provide time for a CNMI AAG to make another trip to Washington, DC to get a definitive response from the United States. As did the other U.S. agencies previously contacted, the U.S. State Department issued a conclusive letter denying Mr. Tran admission, stating that he does not qualify for refugee status because of his 13 year resettlement in France. 8 C.F.R. § 207.1(b) (1991). Nor does he qualify for political asylum, for the same reason. 8 C.F.R. §§ 208.14(c)(2), 208.15 (1991).

CNMI Superior Court Presiding Judge Hefner issued an order on September 24, 1990 requiring Tran to execute any and all documents necessary to effectuate his departure. Judge Hefner based his ruling on the CNMI Attorney General's broad discretion in immigration matters, pointing out that a federal statute requiring such execution of documents under penalty of felony imprisonment had been upheld against constitutional challenges for vagueness. 8 U.S.C. § 1252(e) (1988); *United States v. Spector,* 343 U.S. 169, 72 S.Ct. 591, 96 L.Ed. 863 (1952).

Fifteen days later, Plaintiff's motion for permission to work in the CNMI pending deportation was heard. The CNMI argued that the Superior Court was bound by the prior order dated March 6, 1989 denying amendment of the original deportation order to permit employment, and referred to 3 CMC § 4332(b)(4) (1988 Supp.), *supra* at 710–711, cited in that order. Characterizing work authorization as a peripheral or collateral matter, and relying on changed

late jurisdiction, and renaming the Commonwealth Trial Court the CNMI Superior Court.

Former Judge Villagomez is now an Associate Justice on the CNMI Supreme Court.

712

circumstances, humanitarian concerns, and a court's inherent powers, Judge Hefner ruled that the prior order was not binding. Order at 2–3, 4–5 (N.Mar.I.Super.Ct., Oct. 12, 1990). Judge Hefner wrote that Tran was no longer a tourist but a deportee, and that the statute would not be violated because the court was not ordering a CNMI government agency to permit him to work, but itself was authorizing him to work. *Id.* at 3–4. The order concluded, "Such authorization shall cease should the respondent not cooperate with the government in resolving his deportation processing and shall terminate upon the issuance of travel documents which will allow him to depart the Commonwealth pursuant to 3 CMC § 4344 [(1988 Supp.)]"

Although Tran had lost the privilege of reapplying for French refugee status by his prolonged absence from France, the French Consul General in Honolulu forwarded application forms for residency in New Caledonia, a French overseas territory, to a CNMI AAG shortly after the motion to compel was filed. On October 23, 1990 a hearing was held before the CNMI Superior Court and Plaintiff was ordered to complete the New Caledonia application within three days.

Plaintiff did so, but gave as the reason for his application, "The Court[] of the CNMI has ordered me to submit this application. So I am writing it and signing it, but I do not wish to obtain any type of visa to visit or reside [in]definitely in your territory (New–Caledonia or France) and my signature does not lie me (sic) to this application." (Translation from French to English.) In answering if he would undertake to leave upon the expiration of any visa granted, he answered, "Of course I undertake to leave and also I do not like going in your territory because I do not like the mentality of your country. I do not like to stay nor in the CNMI (sic)." Above his signature he penned, "My signature does not hold me liable to this application."

When the French Consul General in Honolulu informed the CNMI that the inappropriate comments would inevitably result in denial of a visa by the New Caledonia High Commissioner, the Superior Court, after a hearing on November 6, 1990, ordered Tran to fill out a new application by the next day, with copies to the CNMI and the court, and scheduled a further hearing two days later.

At the November 9, 1990 hearing, Judge Hefner found the Plaintiff's continuing violation of the November 6, 1990 order to be willful and contemptuous and ordered him to 30 days in jail. The confinement was stayed, however, if Tran would complete the application in four days, listing the "reason for your application" to be "for entry," or "for entry, because I am under a CNMI deportation order," or similar wording.

Tran complied. However, he also sent a letter to the French Ambassador in Washington, DC, advising him that the CNMI Superior Court had decided to put him in jail if he did not fill out the visa application, and that doing so was against his will. He also stated that he would "refuse to pass in front of an immigration officer upon entry, and also refuse to comply with all the formalities for a permanent stay." On December 26, 1990, another Superior Court judge signed an order to show cause why Tran should not be held in contempt of court for failing to cooperate in securing entry documents for his deportation, and also to show cause why he should not be required to refrain from further interference in the future.

Following a hearing on January 24, 1991, Judge Hefner issued an order the next day finding Mr. Tran in contempt, committing him to 30 days confinement, and vacating the portion of the October 12, 1990 order authorizing him to work for compensation in the CNMI. This order was not appealed to the CNMI Supreme Court.

DISCUSSION

This Court can easily understand why anyone would strongly desire to live and work on the island of Saipan in the Commonwealth of the Northern Mariana Islands, or elsewhere in the United States. Immigrants are the lifeblood of this country. For hundreds of years, continuing to

this day, an influx of new arrivals (sometimes voluntary, sometimes involuntary) has enhanced the economic, social, cultural, political, and spiritual fabric of American society.

However, a court does not sit as a super-legislature, passing judgment on the wisdom of legislative policy decisions limiting immigration. It is constrained to follow the Constitution and the law. Here, we are not concerned with U.S. immigration policy (except to the extent that the federal government denied Mr. Tran political asylum or refugee status), but rather, that of the CNMI.

Unlike the United States, with its population of close to 250,000,000 and a land area of 3,540,939 square miles, the Northern Mariana Islands are a small chain with only 43,345 residents (1990 census) on three principal inhabited islands, Rota, Saipan, and Tinian. Saipan, where Mr. Tran wishes to live and work, has an area of 47.46 square miles. D. Farrell, *History of the Northern Mariana Islands* 30 (Public School System, CNMI 1991). The population of Saipan in 1990 was 38,896, up from 14,549 in 1980. A large portion of this 167.3% increase consists of so-called "non-resident" (*see* 3 CMC § 4412 (1990 Supp.)) temporary alien workers and their families, primarily from the Philippines, whose labor has contributed to the unprecedented economic growth of the CNMI during the past decade. On a percentage basis this population growth is higher than that of any other U.S. state, commonwealth, or territory.

For reasons including the population and size disparity between the CNMI and the rest of the U.S. and preservation of the CNMI's unique Chamorro and Carolinian ethnic and cultural heritage, the CNMI has been permitted to exercise plenary authority over its own immigration. Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (Covenant) § 503(a), Act of Mar 24, 1976, Pub.L. 94-241, 90 Stat. 263, *as amended by* Pub.L. 98-213, § 9, 97 Stat. 1461, Pub.L. 99-396, § 10, 100 Stat. 840, *reprinted in* 48 U.S.C.A. § 1681 (West 1987) statutory note at 538, 542 *and* CMC at B-101, B-107.

█ The granting of political asylum, refugee status, or authorization for an alien to work all have a close nexus with immigration, and policies relating to these subjects clearly fall within the plenary immigration power. The federal government's exercise of its immigration authority is subject only to "narrow judicial review." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50, 56 (1977) (upheld exclusion of father-illegitimate child relationship from immigration preferences); *Mathews v. Diaz,* 426 U.S. 67, 81-82, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478, 490-91 (1976) (upheld five year residency requirement for aliens' Medicare eligibility). "[O]ver no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens. *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013, 1022 (1909) (upheld civil fine for transporting immigrants with contagious disease) *quoted in Fiallo,* 430 U.S. at 792, 97 S.Ct. at 1478, 52 L.Ed.2d at 56.

In *Sirilan v. Castro,* 1 C.R. 1082 (D.N.Mar.I.App.Div.1984) (Commonwealth Reporter), the former Appellate Division of this Court held that unlike federal immigration laws, which were subject to rational basis scrutiny, CNMI immigration laws were subject to intermediate scrutiny under the CNMI Constitution. *Sirilan,* 1 C.R. at 1118-19, 1125, 1130.

In an action pursuant to 42 U.S.C. §§ 1981, 1983, this Court on one occasion followed *Sirilan* and applied intermediate scrutiny under the U.S. Constitution, not the CNMI Constitution. *Chun Nam Kin v. Government of the Northern Mariana Islands,* No. 88-0022, slip op. at 4 (D.N.Mar.I. Jan. 27, 1989). That decision held unconstitutional the retroactive exclusion and deportation of the immediate families of alien "nonresident" workers who earned less than $20,000 per year, because the retroactive exclusion was not substantially related to the important CNMI governmental interests in controlling immigra-

tion. *Id.* at 6. The result would have been the same under more deferential scrutiny, as there is no rational basis why the exclusion and deportation had to be retroactively applied. The plaintiffs urged the application of strict scrutiny. *Id.* at 4. In view of the egregious facts, this Court did not find it necessary to discuss its reasoning for selecting the standard of review, and followed *Sirilan* without analysis.

■ Until the CNMI exercised its authority to establish a Supreme Court, Covenant § 203(d), the Ninth Circuit acted as the CNMI's local "Supreme Court." 48 U.S.C. § 1694b(c) (1988); *Guam v. Yang,* 850 F.2d 507, 510 n. 4 (9th Cir.1988) (en banc) (applying identical wording of 48 U.S.C. § 1424–3(c) to Guam). The Appellate Division of the U.S. District Court of the Northern Mariana Islands functioned as a local CNMI intermediate appellate court, whose decisions were subject to *de novo* review. 48 U.S.C. § 1694b(a) (1988); *Yang,* 850 F.2d at 511 (applying analogous wording of 48 U.S.C. § 1424–3(a) to Guam). Thus, as CNMI law, *Sirilan* is not binding upon this Court or the CNMI Supreme Court, but is controlling for the CNMI Superior Court.

■ It is not essential at this time to decide whether the rational basis scrutiny of the U.S. Supreme Court or the intermediate scrutiny of *Sirilan* should apply in this case, because the parties have not briefed the issue and because the relevant CNMI immigration policies pass muster regardless. The CNMI has no express statutory policy on refugee status or political asylum.[4] However, the United States denied both to Mr. Tran because he was firmly resettled in France for 13 years. 8 C.F.R. §§ 207.1(b), 208.14(c)(2), 208.15 (1991). Persons entering as visitors and tourists are specifically forbidden from working in the CNMI. 3 CMC § 4332(b)(4) (1988 Supp.). Both bases for exclusion are substantially related to important CNMI governmental interests in controlling immigration to preserve the local culture and maintaining economic opportunity for indigenous residents while at the same time promoting tourism, a mainstay of the local economy. Thus, the denial of refugee status, political asylum and the prohibition of a person who entered as a tourist from working all survive intermediate scrutiny analysis.

This Court also need not consider whether Mr. Tran may be detained pending deportation or the permissible length of such detention, or a CNMI Attorney General's discretion to impose work prohibition as a condition of release, because the CNMI has no statute analogous to 8 U.S.C. § 1252(a) (West 1970 & 1991 Supp.) (arrest and custody of deportees). *See National Center for Immigrants' Rights v. I.N.S.,* 913 F.2d 1350 (9th Cir.1990) (blanket no-work condition exceeds statutory authority), *cert. granted in part,* —— U.S. ——, 111 S.Ct. 1412, 113 L.Ed.2d 465 (1991). Regardless of whether illegal aliens have no right to work in the United States generally, *Id.,* 913 F.2d at 1375 (Trott, J., dissenting), in this case the deportee's prohibition from working was by order of the CNMI Superior Court on January 24, 1991 against Mr. Tran personally, which he chose not to appeal to the CNMI Supreme Court to determine if deportees in the CNMI have a right to work under the CNMI Constitution.

■ This Court takes judicial notice of and has thoroughly reviewed the CNMI Superior Court file in *Office of the Attorney General and the Office of Immigration and Naturalization of the Commonwealth of the Northern Mariana Islands v. Van Maurice Tran,* Civil Action No. 88–665. As indicated in the factual and procedural background above, three times Mr. Tran has thwarted the deportation order by writing a letter to the French Consul General in Honolulu, making disparaging comments on his visa application, and writing a letter to the French Ambassador in Washington, DC. It is possible, though unlikely,

---

**4.** Nor should it be expected to. The granting of U.S. citizenship to aliens remains the province of the United States. Covenant § 506. Therefore, any refugee status or political asylum the CNMI could grant would give the recipient solely the right to reside in the CNMI for the remainder of his or her life.

that illegal alien deportees generally possess an unenumerated constitutional right to work within the United States, even though not enunciated by the U.S. Supreme Court. *Cf. National Center for Immigrants' Rights,* 913 F.2d 1350 (possible statutory basis).

The existence of such a right under the CNMI Constitution has never been addressed by the CNMI Supreme Court. The work authorization granted on October 12, 1990 relied on changed circumstances, humanitarian concerns, and the CNMI Superior Court's inherent powers, as well as the CNMI Constitution. Judge Hefner's order was explicitly conditioned upon Mr. Tran's "cooperat[ion] with the government in resolving his deportation processing."

The plaintiff flouted that order by his letter to the French ambassador in Washington, DC. He waived an appeal to the CNMI Supreme Court from the Superior Court's January 24, 1991 order revoking the privilege of working pending deportation. Under the totality of the circumstances, Mr. Tran has forfeited whatever "right to work" within the CNMI he may have possessed.

## CONCLUSION

An action brought under 42 U.S.C. § 1983 requires an underlying federal constitutional violation. There is no federal constitutional right for a CNMI deportee to work within the CNMI. Therefore, this court has no subject matter jurisdiction and the § 1983 claim is DISMISSED. The pendent claims alleging CNMI constitutional violations and implicating CNMI immigration policy are the only remaining causes of action, and do not involve any federal issue. Accordingly, they may appropriately be resolved by the CNMI judiciary and are hereby DISMISSED.

IT IS SO ORDERED.