YANG Bi Kei, et al., Plaintiffs,

v.

AMERICAN INTERNATIONAL KNITTERS CORPORATION, et al., Defendants.

HUANG Yu Cyi, et al., Plaintiffs,

v.

AMERICAN INVESTMENT CORPORATION, et al., Defendants.

Civ. Nos. 91–0025, 91–0026.

United States District Court, Northern Mariana Islands.

March 31, 1992.

Joe Hill, Hill & Sawhney, Saipan, MP, for plaintiffs.

Robert O'Connor, Law Office of Robert O'Connor, Saipan, MP, for defendants.

James B. Parsons, CNMI Asst. Atty. Gen., Saipan, MP, for amicus curiae.

## DECISION AND ORDER DENYING ALTERNATIVE MOTION TO DISMISS

MUNSON, District Judge.

THIS MATTER came before the Court for consideration of Defendants' alternative motion to dismiss the pendent claims under Commonwealth of the Northern Mariana Islands (CNMI) law for failure to exhaust administrative remedies. The administrative remedies at issue provide reduced judicial access to nonimmigrant alien workers alleging wage and labor violations. Plaintiffs Yang and Huang et al. (collectively "Yang") were represented by Mr. Joe Hill of Hill & Sawhney. Defendants American International Knitters Corporation, et al. and American Investment Corporation, et al. (collectively "AIKC") were represented by Mr. Robert O'Connor. *Amicus curiae* CNMI Attorney General Robert C. Naraja ("CNMI AG") was represented by CNMI Assistant Attorney General James B. Parsons.

AIKC's original motion to dismiss this case, heard on Saturday, September 7, 1991, was denied on September 10, 1991 because the written "consent to sue" requirement of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* applies only to plaintiffs who are acting in a representative capacity.[1] However, as to AIKC's concurrent alternative motion to dismiss the CNMI pendent claims, the Court ordered additional written briefing by October 1991 concerning the constitutionality of the CNMI statute establishing the administrative remedies that Yang failed to exhaust.

1. The pertinent portion of the Decision and Order is attached as an appendix. *Yang v. American Int'l Knitters Corp.*, Civil No. 91–0025, Order at 2–5 (D.N.Mar.I. Sept. 10, 1991).

Because the statute unconstitutionally denies equal protection to nonimmigrant alien workers by restricting their access to the courts, AIKC's alternative motion to dismiss pendent claims for failure to exhaust administrative remedies on the basis of that statute is DENIED.

## I. EXHAUSTION OF REMEDIES STATUTE

The Commonwealth Code, at 3 CMC § 4434(f) (Supp.1990), expressly requires so called "nonresident" nonimmigrant alien workers to exhaust administrative remedies before bringing suit in the CNMI Superior Court for violations of the CNMI Minimum Wage and Hour Act, 4 CMC § 9211 et seq. (1984) or CNMI Nonresident Workers Act, 3 CMC § 4411 et seq. (Supp. 1988), such as the pendent claims in this case. 3 CMC § 4434(f) provides:

> Notwithstanding 1 CMC § 9112 [ (1984) providing judicial review of contested administrative cases], no civil action may be brought by a nonresident worker after the effective date of this Act against an employer for violation of the Minimum Wage and Hour Act (4 CMC § 9211 et seq.) and/or the Nonresident Workers Act (3 CMC § 4411 et seq.) unless the nonresident worker has first filed a written complaint concerning those violations with the Chief of Labor no later than 30 days after the violation is alleged to have occurred. Said civil action, if any, shall be commenced in any court only after the Director or his designee, after a hearing, has issued a decision on the complaint favorable to the nonresident worker and the employer fails or refuses to pay any assessment made by the Director within ten days after receiving notification of the Director's decision, the entire sum of money that the decision says is owed by the employer to the employee. Such payment shall be made through the Director.

3 CMC § 4434(f) (Supp.1990). Yang has raised an equal protection challenge to this statute under the federal and CNMI constitutions, among other grounds.[2] The Fourteenth Amendment applies to the CNMI. Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (Covenant) § 501, Act of Mar. 24, 1976, Pub.L. 94–241, 90 Stat. 263, as amended by Pub.L. 98–213, § .9, 97 Stat. 1461, Pub.L. 99–396, § 10, 100 Stat. 840, reprinted in 48 U.S.C. § 1681 (1988) statutory note at 209, 211 and CMC at B–101, B–107. Unlike nonimmigrant workers, U.S. citizens and permanent residents are not subject to the above-quoted administrative scheme, and may bring suit for minimum wage and hour violations directly, 4 CMC § 9244(a) (1984), for up to six years after the violations. 7 CMC § 2505 (1984).

AIKC (along with the CNMI AG) argues that this distinction between nonimmigrant workers versus U.S. citizens and permanent resident aliens is constitutionally valid as part of an elaborate plan dealing with immigration and the protection of nonimmigrant alien workers. Yang's counsel submitted as an exhibit to an earlier opposition to a motion several letters to the CNMI Department of Labor ("Labor") listing cases experiencing long delays and backlogs in the administrative process, in excess of the statutory thirty days for Labor to make a written determination after a worker files a complaint for breach of employment contract, 3 CMC § 4447(b) (Supp. 1988), or ten days after concluding a hearing following a Notice of Violation, 3 CMC § 4444(d) (Supp.1988). Nevertheless, AIKC and the CNMI AG argue that the exhaustion of remedies statute serves to expedite claims and is actually a benefit, not a harm, to nonimmigrant alien workers. Under this theory the aliens, whose labor contracts are typically for a one year period, receive "prompt" resolution of their claims, assuming the aliens file claims within thirty days, rather than having to try to litigate their claims after having

---

**2.** In view of this court's holding that denying judicial access and imposing different statutes of limitations on nonimmigrant workers for wage and hour claims violates equal protection, it is unnecessary to consider whether such denial, and the thirty day limitation period for filing claims, also violates due process.

been forced to leave the island upon expiration of their contracts. In that regard, 3 CMC § 4434(g) (Supp.1990) provides:

A nonresident worker who has left his of her employment[,] whose contract of employment has expired, or who is no longer employed by the employer approved by the Chief, shall not be permitted to remain in the Commonwealth. Except that, a nonresident worker shall be allowed to remain in the Commonwealth for a period not to exceed 20 days in order to pursue a civil action against his or her employer for a breach of their [sic] employment contract, other civil or criminal claims, or to pursue violations of any Commonwealth or federal labor law. Provided, however, for a claim made against an employer for failure to pay the contract wages, a nonresident worker shall only be allowed to remain in the Commonwealth for a period of 30 days in order to pursue such action where a timely claim is made for failure to pay the contract wages and where the employer fails or refuses to pay the full sum of money as ordered by the Director within the ten day period provided by this section. A nonresident worker who has left the Commonwealth shall be allowed to return no sooner than five days before their [sic] scheduled trial date in the Commonwealth Superior Court or federal court. Such person will be required to exit the Commonwealth within three days after the termination of the trial, or any continuances thereof.

*Id.* Because a challenge to this subsection is not yet ripe in this case and has not been made, the Court expresses no opinion as to its constitutionality. *Cf. Office of the Attorney General and the Office of Immigration and Naturalization of the Commonwealth of the Northern Mariana Islands v. Jimenez,* 3 Comm.Rptr. 828, 831–32 (D.N.Mar.I.App.Div.1989) (no standing to challenge if no lawsuit filed).

The CNMI AG contends without citing authority that the quoted subsection (g) precludes an alien's deportation until Labor has concluded an investigation and issued a report. Amicus Memorandum at 14. Prior to expiration of their contracts, the aliens are protected from summary deportation upon termination of employment by the requirement of a hearing prior to cancellation of their labor certificates. 3 CMC § 4444(e) (Supp.1988); *Jimenez,* 3 Comm. Rptr. at 835–38. No case law has been cited interpreting subsection (g) to preclude deportation until Labor has acted, subsequent to expiration of aliens' contracts, but such a reading seems reasonable and may well represent the policy of the CNMI AG. Nevertheless, as analyzed in Part III below, this separate protection against abrupt deportation does not save 3 CMC § 4434(f) nor provide a rational basis for denying these aliens access to the courts on their minimum wage and hour claims. By its terms the provisions of the CNMI Nonresident Workers Act are severable, CNMI Pub.L. 3–66, § 21, and the Court will consider 3 CMC § 4434(f) singly on its merits, albeit in the context of the entire Act.

Prior to discussing the immigration power of the CNMI and the lack of a rational basis for the statute which would justify the denial of equal protection, it is appropriate to consider a term used unquestioningly by all the parties, and in the exhaustion of remedies statute itself: "nonresident worker." These aliens are indeed nonresidents before their first arrival in the CNMI. They come here for a fixed contract term after which they must return home. They are not immigrants, who by definition would enter and "permanently settle" in the CNMI. *Black's Law Dictionary* 676 (5th ed. 1979); *Cf.* 8 U.S.C.A. § 1101(a)(15) (West 1970 & Supp.1991) (federal categories of nonimmigrants); 8 U.S.C.A. § 1101(a)(15)(H)(ii)(b) (West Supp. 1991) (nonimmigrants include aliens who "perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country"). But once they arrive, although their domiciles remain in their homelands, the alien laborers do physically reside in the CNMI for the length of their contracts.[3]

---

**3.** One year terms are sometimes extended re-

peatedly, and while they live in the CNMI as

For clarity, this decision refers to people such as the non-domiciliary plaintiffs as "nonimmigrant workers," "nonimmigrant alien workers," or "resident aliens" rather than "nonresident workers," notwithstanding the definition contained in the Nonresident Workers Act:

> "Nonresident worker" means any available individual who is at least 18 years old and who is capable of performing services or labor desired by an employer and who is not a resident worker. Nonresident worker shall not include any immediate relative, spouse or children including adopted children of a U.S. citizen or any foreign investor.

3 CMC § 4412(i) (Supp.1988). In turn, the definition of a "resident worker" is:

> "Resident worker" means any available individual who is capable of performing services or labor desired by an employer, and who is a citizen or national of the United States as defined in the Constitution of the Northern Mariana Islands or who has been granted national or citizenship status pursuant to Commonwealth law or who is legally residing without restrictions as to employment in the Commonwealth.

3 CMC § 4412(n) (Supp.1988). In other words, the operative difference in the definitions of "nonresident" and "resident" workers lies not in where they reside, but in their citizenship or alien's legal residence status for immigration purposes.

Defining something by another name does not make it so. Yang is a resident alien living on Saipan. The confusion generated by the misnomer "nonresident" is highlighted by the cases permitting unequal treatment against true nonresidents cited by AIKC and the CNMI AG, which are not apposite here. *Barclay & Co., Inc. v. Edwards*, 267 U.S. 442, 449–50, 45 S.Ct. 348, 349, 69 L.Ed. 703, 705 (1925) (lower federal tax burden for foreign corporations); *Alexander Ranch, Inc. v. Central Appraisal Dist.*, 733 S.W.2d 303 (Tex.App. 1987) (corporation controlled by nonresi-

dent aliens ineligible for reappraisal of land as open space); *Lehndorff Geneva, Inc. v. Warren*, 74 Wis.2d 369, 246 N.W.2d 815 (1976) (land in excess of one square mile optioned to West German owned corporation subject to state forfeiture); *United States v. Tsuda Maru*, 479 F.Supp. 519 (D.Alaska 1979) (federal government may prohibit foreign fishing vessels).

The attempt by AIKC and the CNMI AG to distinguish leading Supreme Court cases, *see Graham v. Richardson*, 403 U.S. 365, 371, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534, 541 (1971) (states may not refuse welfare benefits based upon alienage); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419–20, 68 S.Ct. 1138, 1142–43, 92 L.Ed. 1478, 1487 (1948) (alien entitled to state commercial fishing license), on the ground that those cases refer to resident aliens rather than "nonresident aliens" is incorrect. The nonimmigrant worker plaintiffs are resident aliens.

## II. IMMIGRATION POWER OF THE CNMI

Unlike any of the several States, Territories, or Commonwealths, Congress has granted the CNMI authority over its own immigration. Covenant § 503(a), *reprinted in* 48 U.S.C. § 1681 (1988) statutory note at 209, 211 *and* CMC at B–101, B–107. *See Tran v. Northern Mariana Islands*, 780 F.Supp. 709 (D.N.Mar.I.1991).

The federal government's exercise of its immigration authority is subject only to "narrow judicial review." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50, 56 (1977) (upheld exclusion of father-illegitimate child relationship from immigration preferences); *Mathews v. Diaz*, 426 U.S. 67, 81–82, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478, 490–91 (1976) (upheld federal five year residency requirement for aliens' Medicare eligibility). "[O]ver no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens. *Oceanic Steam Navigation Co.*

---

"nonresidents," any of their children born here are U.S. citizens. Covenant § 303. These nonimmigrants must obey all local laws, share equal tax burdens, and make substantial contributions to the community.

*v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 1676, 53 L.Ed. 1013, 1022 (1909) (upheld civil fine for transporting immigrants with contagious disease) *quoted in Fiallo,* 430 U.S. at 792, 97 S.Ct. at 1478, 52 L.Ed.2d at 56.

*Tran,* 780 F.Supp. at 713.

The CNMI AG and AIKC urge application of the same deferential rational basis scrutiny for equal protection challenges to CNMI laws dealing with immigration as courts apply to federal immigration laws. Yang argues that intermediate scrutiny is required, citing *Sirilan v. Castro,* 1 Comm. Rptr. 1082, 1118–19, 1125, 1130 (D.N.Mar. I.App.Div.1984). *Sirilan* involved a due process and equal protection challenge to the termination of the CNMI's permanent resident program. Like this case, it involved distinctions between aliens, specifically, whether they had lived in the CNMI for five years and submitted their paperwork prior to the termination of the program. In *Sirilan* the former Appellate Division of this Court, acting as a local appellate court pursuant to 48 U.S.C. § 1694b (1982), imposed intermediate scrutiny under the CNMI Constitution. *Sirilan,* 1 Comm.Rptr. at 1118–19, 1125, 1130.

However, this Court on one occasion followed *Sirilan* and applied intermediate scrutiny under the U.S. Constitution, not the CNMI Constitution. *Chun Nam Kin v. Northern Mariana Islands,* 3 Comm. Rptr. 608, 612 (D.N.Mar.I.1989). Because of the egregious facts in *Chun,* this Court did not find it necessary to discuss its reasoning for selecting the standard of review, as the statute would have been equally unconstitutional under more deferential scrutiny. *Tran,* 780 F.Supp. at 713–14. Here, as in *Chun,* the statute fails both standards of review, including rational basis scrutiny as indicated below.

### III. LACK OF RATIONAL BASIS FOR STATUTE

Yang challenges only a single subsection of the CNMI Nonresident Workers Act, which denies the nonimmigrant alien workers court access for their claims. 3 CMC § 4434(f). While the Court will certainly evaluate the rationality of subsection (f) in the context of the entire Act, if the provision violates equal protection, the soundness of the remainder of the Act will not save it. Thus, the determinative issue is whether there is a rational basis for denying equal access to the courts.

The CNMI AG argues that equal access to the courts has never been a universal right of aliens. However, his two examples fail to support such a sweeping statement. 28 U.S.C. § 2502 (1988) provides that in the U.S. Claims Court, aliens may sue the federal government only if the foreign government of which they are citizens permits similar suits against it by U.S. citizens. 28 U.S.C. § 1391(d) (1988) states that venue is proper for suit against an alien in any of the 94 U.S. district courts. Neither statute derogates aliens' equal access to the courts.

In fact, although permissible distinctions may be made between citizens and aliens or among aliens, *Mathews,* 426 U.S. at 78 n. 12, 96 S.Ct. at 1890 n. 12, 48 L.Ed.2d at 489 n. 12, equal access to a court of law has been a part of our tradition since the ratification of the Fourteenth Amendment. The Civil Rights Act of 1866, Act of Apr. 9, 1866, c. 31, § 1, 14 Stat. 27, *as amended by* The Voting Rights Act of 1870, Act of May 31, 1870, c. 114, § 16, 16 Stat. 144, provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and *enforce contracts, to sue, be parties, give evidence,* and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1988) (emphasis added). This statute could not be more clear, and formerly was codified in Title 8, United States Code, Aliens and Nationality, at 8 U.S.C. § 41 (1946). "All persons," within the meaning of section 1981, protects aliens against discrimination by a state, *Graham,* 403 U.S. 365, 91 S.Ct. 1848; *Takahashi,*

334 U.S. 410, 68 S.Ct. 1138, although not, perhaps, against private discrimination. *Bhandari v. First Nat'l Bank of Commerce*, 829 F.2d 1343 (5th Cir.1987) (en banc). A nonimmigrant alien is undoubtedly a "person" within the meaning of the equal protection clause. *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220, 226 (1886); *Plyler v. Doe*, 457 U.S. 202, at 210, 102 S.Ct. 2382, at 2391, 72 L.Ed.2d 786 at 791 (1982).

The CNMI has control over its own immigration and has greater latitude than a state has in regulating aliens, as does Congress. However, the asserted unimportance of the right to sue or the equivalence of administrative measures are not rational bases for dispensing with this right. Indeed, the right to judicial access is so fundamental that in almost any circumstance other than immigration, its denial based on alienage would evoke strict scrutiny.

The fact that there is an elaborate system pertaining to alien laborers does not make this particular subsection rational. If subsection (f) is struck down, the remainder of the Act will continue in full force and effect. CNMI Pub.L. 3–66, § 21. A review of the entire Act does not disclose that its effectiveness rests upon barring the courthouse door to nonimmigrant alien workers.

The strongest argument suggested by the CNMI and AIKC as a rational basis for the provision is efficiency. Under this reasoning, there is a rational relationship between the administrative scheme and the CNMI's valid interest in prompt, fair settlement of resident aliens' labor claims. However, subsection (f) is both overbroad and under-inclusive in attaining these goals, which do not logically flow from the restriction in question. While claiming to protect the resident aliens from the burden of having to prosecute litigation *in absen-*

*tia*, the CNMI shoots a fly with a cannon and denies their day in court altogether. On the other hand, if the administrative scheme as a substitute or prerequisite to filing suit is as salutary as claimed, there is no legitimate reason to exclude citizens from its scope.

Yet the number of complaints filed by alien laborers apparently dwarfs those filed by citizens. Whether this represents widespread abuse of and discrimination against nonimmigrant alien workers by employers or the workers' cynical attempts to prolong their stays in the CNMI, the wage claim resolution system seems overloaded. Restricting lawsuits would thus be a measure to conserve CNMI administrative and judicial resources. The CNMI Superior Court, or the U.S. District Court in diversity cases alleging over $50,000 in controversy[4] or alleging a federal question in any amount,[5] could be overwhelmed by labor cases. However, the solution to injustice lies not in abandoning the efforts to achieve right, but in devoting adequate enforcement and judicial resources to accomplish the job.

No rational basis has been advanced for abrogating the right of access to the courts by nonimmigrant alien workers.

## CONCLUSION

█ 3 CMC § 4434(f) denies nonimmigrant workers their equal protection right to sue for wage and hour violations. Because the CNMI has almost plenary authority over immigration under Covenant § 503(a), it has broad powers to enact laws concerning resident aliens. However, there is no rational basis between denial of the aliens' judicial access and a valid CNMI interest. Therefore, subsection (f) is unconstitutional. Accordingly, the alternative motion of AIKC to dismiss the pendent

---

**4.** 28 U.S.C. § 1332(a) (1988); 48 U.S.C. § 1694a(a) (1988), Act of Oct. 5, 1984, Pub.L. No. 98–454, § 902, 98 Stat. 1744; *See* H.Rep. No. 784, 98th Cong., 2nd Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 2908 (excluding relevant pages). Previously, there was no minimum amount in controversy required. 48 U.S.C. § 1694a(a) (1982), Act of Nov. 8, 1977, Pub.L. No. 95–157, § 2(a), 91 Stat. 1266; *See*

S.Rep. No. 475, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 3307. The original version of 48 U.S.C. § 1694a(a) implemented Covenant § 402(a), which has been superseded by the 1984 statutory amendment pursuant to Covenant § 105.

**5.** 28 U.S.C. § 1331 (1988).

claims for failure to exhaust administrative remedies is DENIED.

IT IS SO ORDERED.

## APPENDIX A

### WRITTEN CONSENT TO SUE

29 U.S.C. § 216(b) provides in relevant part:

> (b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages.... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his *consent in writing to become such a party* and such consent is filed in the court in which such action is brought. (Emphasis added.)

The issue in the case at bar is whether "consent" is required when individually named plaintiffs sue on their own behalves, or only when they are being represented by another named plaintiff.

The Ninth Circuit has not analyzed and directly addressed this issue. However, both the Fifth and Sixth Circuits have held that there is no need to "consent" to one's own suit, that the requirement is solely apposite to representative actions. *Allen v. Atlantic Richfield Co.,* 724 F.2d 1131, 1134–35 (5th Cir.1984); *Morelock v. NCR Corp.,* 586 F.2d 1096, 1103 (6th Cir.1978); *see also Wallace v. Water Tank Service Co.,* 256 F.Supp. 689, 690 (W.D.Okl.1966); *Mitchell v. Mace Produce Co.,* 163 F.Supp. 342, 346–47 (D.Md.1958); *Deley v. Atlantic Box & Lumber Corp.,* 119 F.Supp. 727 (D.N.J.1954).

Yet Defendants argue that the Ninth Circuit has ruled to the contrary in a concluding footnote to the reversal of a summary judgment which had dismissed a FLSA claim. *Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748, 756 n. 19 (9th Cir.1979). There, the defendants had urged partial affirmance of the district court's dismissal with prejudice, on the alternative ground of three plaintiffs' failure to file written consents. However, the panel noted, "As we read this statute, the FLSA claim of a plaintiff who has failed to file a written consent is subject to dismissal *without* prejudice." (Emphasis in original.) *Id.* On remand the three plaintiffs were required to file written consents.

Therefore, in *Real,* the issue was whether a dismissal for failure to file a written consent, when required, is with or without prejudice, not whether and under what circumstances a consent is required at all. No analysis of that issue was undertaken. It is significant that *Real* was a representative action. Unlike here, the *Real* plaintiffs sued individually and on behalf of all others similarly situated. *Id.* 603 F.2d at 748.

Arrayed against the defendants' "plain meaning" of the statutory language *"No employee* shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party...." (emphasis added) is the definition of the word "consent", "(1) Voluntary acceptance or allowance of what is planned or done by another; permission. (2) Agreement as to opinion or a course of action." *The American Heritage Dictionary* 283 (1975). An individual need not and can not give "consent" to himself for his own actions.

Moreover, the legislative history of the 1947 amendment, requiring written consent, to the 1938 FLSA indicates that its purpose was to apprise defendants of plaintiffs' identity in representative actions. *Allen,* 724 F.2d at 1134–35; *Deley,* 119 F.Supp. at 728. Here, there is no doubt as to the identity of the plaintiffs, who are all listed in the caption. Contrary to defendants' assertion, plaintiffs' counsel is not

their "representative;" he is not a named plaintiff suing on their behalf.

Defendants attempt to distinguish the foregoing cases because in at least one of them, the plaintiffs are expressly named in separate counts of the complaint, rather than solely in the caption, as here. However, nothing would be gained by multiplying the length of the complaint by the number of plaintiffs. Plaintiffs' complaint states a cause of action for each named plaintiff. Individual relief is sought for each of the plaintiffs. Fed.R.Civ.P. 20(a) permits joinder "in one action as plaintiffs if they assert any right to relief ... arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."

Finally, many or most of the plaintiffs now reside in the People's Republic of China. The time, effort, and delay in obtaining the written "consents" would be inimical to the prompt and just resolution of this matter.

Accordingly, because Plaintiffs are not acting in a representative capacity, Defendants' motion to dismiss this case for failure to file a written "consent" is DENIED.