**UNITED STATES of America, Plaintiff,**

v.

**Guadalupe HERNANDEZ–GUERRERO, Defendant.**

**Criminal No. 97–0965–R.**

United States District Court, S.D. California.

May 1, 1997.

---

934

Laura Marran, Asst. U.S. Atty., San Diego, CA, for Plaintiff.

Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

RHOADES, District Judge.

This matter comes before the Court on Defendant Hernandez–Guerrero's Motion to Dismiss the Indictment pursuant to Fed. R.Crim.P. 12(b). Defendant Hernandez–Guerrero (hereinafter "Defendant") claims that in enacting 8 U.S.C. § 1326, Congress exceeded its constitutional authority.

For the reasons stated below, Defendant's Motion is DENIED.

## I. BACKGROUND

On January 19, 1997, Border Patrol agents arrested Defendant one mile west of Campo, California. Defendant allegedly waived his *Miranda* rights, and informed the Government that he was a Mexican citizen, who entered the United States illegally on January 19, 1997. The Government claims that Defendant has been deported from the United States seven times, and that he has sustained approximately ten misdemeanor and felony convictions.

On March 26, 1997, a federal grand jury returned a one-count indictment against Defendant, charging him with a violation of 8 U.S.C. § 1326(a) and § 1326(b)(1).

## II. ANALYSIS

### A. The Court must presume federal statutes to be constitutional.

Defendant filed the present motion to dismiss the indictment, arguing that Congress exceeded its constitutional authority in enacting 8 U.S.C. § 1326.[1]

1. Section 1326 provides:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been arrested and deported, has been excluded and deported, or has departed the United States while an order of exclusion or deportation is outstanding, and thereafter.

■ The Supreme Court repeatedly has held that "statutes should be construed whenever possible so as to uphold their constitutionality." *See, e.g., United States v. Vuitch,* 402 U.S. 62, 70, 91 S.Ct. 1294, 1298, 28 L.Ed.2d 601 (1971). In particular, immigration statutes are accorded special deference, and the Court will not nullify an immigration statute unless no rational basis for the statute exists. *See Adams v. Howerton,* 673 F.2d 1036, 1042 (9th Cir.), citing *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982).

As described below, there are at least two bases for § 1326's constitutionality. First, Congress has the authority to pass § 1326 as incident to the inherent power of a sovereign nation to regulate immigration. Second, Congress has the power to pass § 1326 as necessary and proper to the exercise of its authority under the Commerce Clause.

**B. Congress has the power to pass § 1326 due to the inherent rights of a sovereign nation.**

■ Much like Heimdall's control regarding who could enter Asgard, located in the Heavens, across the bifrost bridge, Congress has plenary immigration power to determine who may enter into the United States across its borders.[2] *See Kleindienst v. Mandel,* 408 U.S. 753, 765–67, 92 S.Ct. 2576, 2582–84, 33 L.Ed.2d 683 (1972) (noting that Congress has plenary control over admission and exclusion of aliens). Indeed, "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909).

Defendant concedes that Congress has the power to pass civil legislation to regulate immigration. Defendant contends, however, that Congress does not have the power to pass criminal laws to regulate immigration. Defendant cites no direct authority to support his position, claiming instead that the issue presented is one of first impression.

In oral argument before the Court, Defendant posited that the States may impose criminal penalties upon persons who enter the United States unlawfully. In so arguing, Defendant misconstrued basic tenets of federalism. The Framers originally envisioned "a system of dual sovereignty between the States and the Federal Government," in which the federal government would have only limited powers. *See Gregory v. Ashcroft,* 501 U.S. 452, 458, 111 S.Ct. 2395, 2399, 115 L.Ed.2d 410 (1991). As written by James Madison:

> [t]he powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite. The former will be exercised principally on external objects, as war, peace, negotiation, and foreign commerce; with which last the power of taxation will, for the most part, be connected. The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State.

*The Federalist Papers No. 45* at 137 (John Hopkins Univ. Press ed., 1981). Ultimately, the Tenth Amendment embodied the principle that "[t]he powers not delegated to the United States by the Constitution, nor prohibited to it by the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X.

---

(2) enters, attempts to enter, or is at any time found in, the United States ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.
(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—
    (1) whose deportation was subsequent to a conviction for commission of three or more

misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both.

**2.** *See Bulfinch's Mythology* 332 (Avenel 1978 ed.).

Defendant argues that Congress may pass criminal laws only when such laws are necessary and proper to the execution of a specifically enumerated constitutional power. Defendant asserts that because the Constitution does not explicitly delegate immigration authority to Congress, Congress lacks the power to enact criminal statutes governing immigration. Defendant cites no authority for such a proposition, and the Court has found none.

Rather, the Supreme Court has stated that "it would be plainly competent for congress to declare the act of an alien in remaining unlawfully within the United States to be an offence punishable by fine or imprisonment, if such offence were to be established by a judicial trial." *Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 980, 41 L.Ed. 140 (1896). While Defendant claims that *Wong Wing* is "outdated", Defendant cites no authority that contradicts the above Supreme Court dicta, despite the fact that the courts have had over one hundred years to do so.

Moreover, it appears that the two-step analysis referred to by Defendant does not apply to the immigration law he contests. The Supreme Court has held that:

[t]he broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers, is categorically true only in respect of our *internal* affairs. In that field, the primary purpose of the Constitution was to carve from the general mass of legislative powers then possessed by the states such portions as it was thought desirable to vest in the federal government, leaving those not included in the enumeration still in the states. *That this doctrine applies only to powers which the states had is self evident.* And since the states severally never possessed international powers, such powers could not have been carved from the mass of state powers but obviously were transmitted to the United States from some other source.

*United States v. Curtiss–Wright Export Corp.,* 299 U.S. 304, 315–16, 57 S.Ct. 216, 219, 81 L.Ed. 255 (1936) (emphasis added) (citations omitted).

The above quotation highlights a fatal flaw in Defendant's argument. By definition, immigration statutes govern the United States' relations with foreign nationals and foreign States, and do not implicate solely internal affairs. The two-pronged test that provides the basis for Defendant's argument simply does not apply to immigration legislation.

■ Moreover, the States do not have the power to regulate immigration. Under our federalist system of government, "the National Legislature ... legislate[s] in all cases for the general interest of the union, and also in those to which the States are separately incompetent, or in which the harmony of the United States may be interrupted by the exercise of individual legislation." *Notes of the Debates in the Federal Convention of 1787 Reported by James Madison* 380 (W.W. Norton & Co. ed., 1966), *cited in* Donald H. Regan, *How to Think about the Federal Commerce Power and Incidentally Rewrite United States v. Lopez,* 94 Mich. L.Rev. 554, 555–56 (1995). It is manifest that immigration is a classic area of national import that requires uniformity. Substantial precedent has established that Congress has plenary power to govern immigration issues. *See, e.g., Kleindienst v. Mandel,* 408 U.S. 753, 765–66, 92 S.Ct. 2576, 2582–84, 33 L.Ed.2d 683 (1972). Indeed, the "power to regulate immigration is unquestionably exclusively a federal power." *De Canas v. Bica,* 424 U.S. 351, 354–55, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976).

■ Not only does Congress have the authority to regulate immigration, but Congress exhibited an intent to preemptively occupy the immigration sphere by passing the comprehensive, detailed regulatory scheme embodied in the Immigration and Nationality Act, § 101 et seq., as amended, 8 U.S.C. § 1101 et seq. *See, e.g., League of United Latin American Citizens v. Wilson,* 908 F.Supp. 755, 775–76, 786 (C.D.Cal.1995). Accordingly, the States are precluded from regulating immigration, and state laws that had the effect of regulating immigration have been held unconstitutional. *See id.* Thus, contrary to Defendant's position, the States

do not have the power to draft criminal laws regulating immigration.[3]

Accordingly, if Congress did not have constitutional authority to regulate immigration with criminal penalties, then neither Congress nor the States would be permitted to enact laws imposing criminal sanctions upon individuals who repeatedly entered the United States illegally. Such a legal vacuum would be untenable, and indeed, no precedent exists to support such a predicament. Rather, courts have noted that Congress must be afforded sufficient latitude to adopt policies necessary and proper for the fulfillment of its legislative duties. *See, e.g., Panama Refining Co. v. Ryan,* 293 U.S. 388, 421, 55 S.Ct. 241, 248–49, 79 L.Ed. 446 (1935).

■ In the present case, Congress has decided that criminal sanctions are necessary to deter deported individuals from attempting to re-enter the country illegally, and to punish previously deported individuals who re-enter the country illegally. Congress has also specified that higher sanctions are warranted when an individual illegally re-enters the United States after deportation, if prior deportation was subsequent to a criminal conviction. *See* 8 U.S.C. § 1326(b)(1). The wisdom of such policies are not for the Court to consider. Rather, Congress has "sweeping power over immigration policy." *Catholic Social Services, Inc. v. Reno,* 113 F.3d 922, 927 (9th Cir.1997). As a result, Congress's power over aliens is subject only to narrow review by the courts. *See, e.g., Fiallo v. Bell,* 430 U.S. 787, 792, 796, 97 S.Ct. 1473, 1477–78, 1480, 52 L.Ed.2d 50 (1977); *Mathews v. Diaz,* 426 U.S. 67, 81–82, 96 S.Ct. 1883, 1892–93, 48 L.Ed.2d 478 (1976).

As such, the Court is unpersuaded by Defendant's position that Congress may utilize its extra-constitutional sovereign powers to enact civil, but not criminal, immigration laws.[4] Because a rational relationship exists between the criminal sanction embodied in § 1326 and the need to regulate immigration, the Court must uphold the statute. *See Adams v. Howerton,* 673 F.2d 1036, 1042 (9th Cir.), citing *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982).

### C. The Commerce Clause provides Congress with the authority to enact criminal laws regulating immigration.

■ The fact that prior precedent recognizes Congress's power over immigration as an incident of sovereignty does not signify that Congress could not regulate immigration under the auspices of one of its enumerated powers. Accordingly, even if Congress could not enact criminal immigration sanctions pursuant to the inherent power of a sovereign nation, § 1326 would still be constitutional as an exercise of Congress's authority under the Commerce Clause.

■ The Constitution explicitly grants Congress the power to "regulate Commerce with foreign Nations and among the several States." U.S. Const. art. I, § 8, cl. 3. Courts may invalidate laws passed under the Commerce Clause if no rational basis exists to support a congressional finding that the regulated activity affects interstate or foreign commerce. *See United States v. Martinez,* 49 F.3d 1398, 1400 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 749, 133 L.Ed.2d 696 (1996). It is undeniable that the entry of foreign nationals could affect both foreign and interstate commerce. Indeed, one can assume that many individuals enter the United States illegally because of their desire to find better economic opportunities here. Such individuals provide both an inexpensive source of foreign labor, and a market

---

3. On the other hand, the States are not precluded from enforcing federal immigration provisions. *See Gonzales v. City of Peoria,* 722 F.2d 468, 475 (9th Cir.1983).

4. Defendant relies upon *Toquero v. INS,* 956 F.2d 193, 196 (9th Cir.1992), to support his argument that federal immigration power is inherently civil, rather than criminal. In *Toquero,* the Ninth Circuit examined the due process requirements for deportation proceedings. The court referred to a First Circuit case, which recognized deportation proceedings to be civil rather than criminal in nature. Such a recognition does not support Defendant's broader proposal that Congress is precluded from passing criminal laws to regulate immigration.

for domestic goods and services, thereby affecting both interstate and foreign commerce.

*United States v. Lopez,* 514 U.S. 549, 551, 115 S.Ct. 1624, 1626, 131 L.Ed.2d 626 (1995) provides no support for the position that Congress exceeded its authority in enacting § 1326. In *Lopez,* the Supreme Court held that Congress had exceeded its interstate Commerce Clause authority by passing a statute that made it a federal offense to possess a gun in a school zone. The Supreme Court noted that "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567, 115 S.Ct. at 1634. In the present case, however, the illegal entry of foreign nationals after deportation does substantially affect interstate commerce. *See id.* at 556–60, 115 S.Ct. at 1629–30. Moreover, individuals who enter the country illegally provide a source of labor, thereby constituting "persons or things in interstate commerce." *Id.* at 558, 115 S.Ct. at 1629.[5] Finally, unlike *Lopez,* the criminal law-making authority that Defendant disputes in the present case is not one that can be exercised by the States.

In short, *Lopez* does not support the argument that § 1326 is unconstitutional.

## III.  CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss the Indictment is DENIED.

IT IS SO ORDERED.

---

**5.**  While Defendant claimed during oral argument that persons should not be construed as "persons or things in interstate commerce", Ninth Circuit precedent explicitly provides otherwise. *See United States v. Hanigan,* 681 F.2d 1127, 1130–31 (9th Cir.1982) (noting that movement of undocumented alien laborers across border could constitute articles of commerce), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983).